[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE (#168
The plaintiffs in this case include individual landowners who reside or resided in the vicinity of landfills located in the town of Canterbury, and People's Rights In A Clean Environment, Inc. (P.R.I.C.E, Inc.), a Connecticut nonprofit corporation, whose members are residents and/or taxpayers of the town of Canterbury and Windham County who are dedicated to preserving the public trust in the air, water and other natural resources in and around Canterbury.
By way of a complaint dated September 23, 1994, the plaintiffs commenced an action against the defendant, Timothy R. E. Keeney, commissioner of environmental protection.[1] By way of a fourth revised complaint dated June 12, 1996, the plaintiffs cited into the action the defendants Yaworski, Inc., James Yaworski, Sr., and Rose Yaworski, the owners and operators of the landfills that are the subject of this action, and James Yaworski, Jr., and Denis Yaworski, officers and shareholders who allegedly have been actively engaged in all phases of the operation of the landfills. On January 14, 1997, the plaintiffs filed a sixth revised complaint, citing into the action the following defendants: Yaworski Trucking, Inc.; Packer Limited, LLC; Quinebaug Valley Regional Resources, LLC; Haul of Fame, Inc.; Canterbury Environmental Management, LLC; Packer Mining, LLC; and Aspinook, LLC. The plaintiffs allege fraudulent conveyance claims against these defendants. The plaintiffs' seventh revised complaint, dated February 24, 1998, is the subject of this motion to strike.
In their seventh revised complaint, the plaintiffs allege that the defendants unlawfully accepted hazardous chemicals for disposal that have contaminated the surrounding environment and CT Page 7980 their properties. The twenty-count complaint includes claims for private nuisance (counts 2, 3 and 20), public nuisance (counts 15, 16 and 17), trespass (counts 4 and 5), strict liability for an ultrahazardous activity (counts 6 through 14) and fraudulent conveyances (counts 18 and 19).
The defendants move to strike counts two through twenty of the seventh revised complaint. The defendants filed a memorandum of law in support of their motion to strike. The plaintiffs timely filed a memorandum of law in opposition, to which the defendants filed a supplemental memorandum in reply.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. . . . The court must construe the facts in the complaint most favorably to the plaintiff." (Citations omitted; internal quotation marks omitted.) Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25
(1992). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded. . . ." (Citations omitted.)RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 383
n. 2, 650 A.2d 153 (1994). "If the facts provable in the complaint would support a cause of action, the motion to strike must be denied."Waters v. Autuori, 236 Conn. 820, 826, 676 A.2d 357 (1996).
 I. PRIVATE NUISANCE
"A nuisance, whether public or private, describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property." (Internal quotation marks omitted.) Quinnett v. Newman, 213 Conn. 343, 348,568 A.2d 786 (1990). In order to establish a claim for a private nuisance, the plaintiffs must prove the existence of the following four elements: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the [plaintiffs'] injuries and damages." (Internal quotation marks omitted.) TomassoBrothers, Inc. v. October Twenty-Four, Inc., 221 Conn. 194, 197,602 A.2d 1011 (1992).
The defendants argue in support of their motion to strike CT Page 7981 counts two, three and twenty that the plaintiffs fail to allege that any existing condition had a natural tendency to create danger and inflict injury upon persons or property. They argue that because the plaintiffs allege that actions of the defendants had a natural tendency to cause harm and notconditions, the plaintiffs' allegations are insufficient to state a claim for nuisance. The plaintiffs argue that they have alleged the essential elements of a nuisance claim.
The defendants' argument is unavailing. In Quinnett v.Newman, supra, 213 Conn. 349, the court explained that "[t]he term nuisance refers to the condition that exists and not to the act or failure to act that creates it. If the creator of the condition intends that act that brings about the condition found to be a nuisance, the nuisance thereby created is said to be absolute and its creator is strictly liable. . . . If the condition claimed to be a nuisance arises out of the creator's unintentional but negligent act, i.e., a failure to exercise due care, the resulting condition is characterized as a negligent nuisance." Thus, while a nuisance is a condition that has a tendency to inflict injury on persons or property, it is a condition that is brought about by actions that are either intentional or negligent. The allegations in counts two, three and twenty that the actions of the defendants created the nuisance, therefore, are appropriate. See Connecticut Light Power Co. v. Streckfus, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 545198 (November 16, 1995, Hennessey, J.) (holding that allegations that the defendants' actions caused injury to the plaintiffs property were sufficient to allege a private nuisance claim).
In counts two, three and twenty, the plaintiffs incorporate the allegations of count one wherein they allege that they have an ownership interest in the affected property. They also allege that the defendants failed to dispose of hazardous substances and solid waste in a reasonable manner, that they knowingly treated, stored and disposed of hazardous waste without proper permits or licenses and that the actions of the defendants in operating the landfill were unlawful. Counts two, three and twenty allege further that the actions of the defendants in allowing the unlawful uses of their properties had a natural tendency to and did cause harm to others, and that the dangers created are continuing ones. The plaintiffs also allege that hazardous substances, dust, noises, odors, unsafe traffic and other conditions are a continuing threat to the plaintiffs and have CT Page 7982 caused them to suffer continuing injury that affects the use and enjoyment of their property, diminishes their property values and impairs their health.
The court finds that the plaintiffs have alleged sufficient facts to support their nuisance claims. Accordingly, the court denies the motion to strike counts two, three and twenty. SeeAhnert v. Getty, Superior Court, judicial district of New London at New London, Docket No. 537008 (April 4, 1997, Handy, J.).
 II. PUBLIC NUISANCE
When a public nuisance is claimed, the plaintiffs must establish not only the four elements discussed above, but also that the condition or conduct complained of interfered with a right common to the general public.State v. Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177,183, 527 A.2d 688 (1987). A nuisance is public "where it affects the rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled." (Internal quotation marks omitted.) Anzellotti v. NationalAmusements, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 546129 (February 20, 1996, Hennessey, J.).
In Higgins v. Connecticut Light Power Co., 129 Conn. 606,611, 30 A.2d 388 (1943), the court held that "if the annoyance is one that is common to the public generally then it is a public nuisance. . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." (Citations omitted; internal quotation marks omitted.) "It is not, however, necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large." 4 Restatement (Second), Torts § 821 B comment (g) (1977). "In any case in which a private nuisance affects a large number of persons in their use and enjoyment of land it will normally be accompanied by some interference with the rights of the public as well. Thus the spread of smoke, dust or fumes over a considerable area filled with private residences may interfere also with the use of the public streets or affect the public health of so many persons as CT Page 7983 to involve the interests of the public at large." Id.
The defendants move to strike counts fifteen, sixteen and seventeen, which allege public nuisance, because the plaintiffs fail to allege either that a condition caused the injury[2] or that the rights infringed were those of the general public. The defendants argue that the plaintiffs fail to allege that the injuries were sustained in the exercise of a public right.
The plaintiffs argue in opposition that they have alleged an interference with a public right, namely, the enjoyment of the public trust in the Quinebaug River and in clean breathable air, and that the public harm alleged is the unlawful impairment of their rights in the public trust. The plaintiffs rely on General Statutes § 22a-15 to support their argument. Section 22a-15
provides that: "It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that each person is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction."
In counts fifteen, sixteen and seventeen, the plaintiffs incorporate the allegations of count one wherein they allege that the actions of the defendants in failing to maintain and repair a gas recovery system to control odors and airborne emissions, in failing to maintain proper cover over the solid waste at the landfill, in permitting the vertical and horizontal expansion of solid waste piles in excess of permitted heights and lateral boundaries and in accepting for disposal hazardous and toxic substances for which the facility was not designed, resulted in the contamination of surface waters of the state near and including the Quinebaug River, and the contamination of the air and groundwater.
These counts further allege that the condition complained of had a natural tendency to inflict injury upon person or property, that the danger created was a continuing one, that the use of the land was unreasonable and unlawful and that the existence of the nuisance was the proximate cause of the plaintiffs' injuries. The plaintiffs further allege that "the above described conditions have caused the members of PRICE and the public generally to suffer continuing injury that injures the public trust in the CT Page 7984 environment by unreasonably polluting the air, water and other natural resources and unreasonably interfering with the public right to enjoy the environment in the Packer Road, Canterbury vicinity."
Based on the foregoing, the court finds that the allegations of counts fifteen, sixteen and seventeen are sufficient to allege public nuisance claims. Accordingly, the court denies the motion to strike these counts.
 III. TRESPASS
In order to state a claim for trespass, a plaintiff must show: "(1) ownership of a possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury. Avery v. Spicer,90 Conn. 576, 579, 98 A. 135 (1916)." Abington LimitedPartnership v. Talcott Mountain Science Center,43 Conn. Sup. 424, 427, 657 A.2d 732 (1994). "The action of trespass to land is used most commonly to describe the intentional and wrongful invasion of another's real property." Blackburn v.Miller-Stephenson Chemical Co., Superior Court, judicial district of Danbury, Docket No. 314089 (January 12, 1995, Stodolink, J.) (13 CONN. L. RPTR. 364). "[A] trespass may be committed on, beneath, or above the surface of the earth [and] the phrase `surface of the earth' includes soil, water, trees, and other growths. . . . Additionally, a trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty." (Citations omitted; internal quotation marks omitted.) Id. Furthermore, "because it is the right of the owner in possession to exclusive possession that is protected by an action for trespass, it is generally held that the intrusion of the property be physical and accomplished by a tangible matter." (Internal quotation marks omitted.) Abington Limited Partnership v. TalcottMountain Science Center, supra, 427.
The defendants move to strike counts four and five, which allege trespass, on the grounds that the plaintiffs fail to allege that the defendants' invasion was intentional or that it interfered with the plaintiffs' exclusive possessory interests. Specifically, they argue that the plaintiffs have failed to allege that the defendants intentionally caused some substance to enter upon the plaintiffs' land. The plaintiffs counter that the CT Page 7985 complaint alleges intentional acts resulting in a physical invasion of the plaintiffs' property by dust, litter and hazardous substances and, therefore, the motion to strike counts four and five should be denied.
Counts four and five incorporate the allegations of count one wherein the plaintiffs allege that they own land near the properties on which the harmful activities occurred and that the defendants knowingly and intentionally accepted for disposal hazardous substances without proper permits or licenses. Counts four and five further allege that the actions of the defendants "in allowing the unlawful uses of their properties resulted in litter, dust . . . and hazardous substances [entering] and [remaining] on the real estate." The plaintiffs also allege that the above conditions caused the plaintiffs to suffer continuing injury that affects and diminishes their property values, interferes with their use and enjoyment of their property, and impairs their health.
The court finds that the plaintiffs have sufficiently alleged a claim for trespass. When viewed in the light most favorable to the plaintiffs, counts four and five sufficiently allege an ownership interest in property by the plaintiffs, entry on the property by the defendants which affected the plaintiffs' possessory rights, intent to do the act that caused the entry on the property and a direct injury.
The court finds the defendants' argument that the plaintiffs fail to allege the requisite intent for an actionable trespass claim unpersuasive. In Ahnert v. Getty, supra, Superior Court, Docket No. 537008, the defendants made a similar argument. The court, however, held that "the Restatement [(Second)] makes clear that action taken with the substantial certainty that the activity will result in entry of foreign matter on the property of another is actionable trespass." Id. In the present case, the plaintiffs allege that the defendants knowingly and intentionally accepted hazardous substances for disposal in a facility not designed for such use, failed to maintain proper cover over the solid waste at the landfill, expanded the solid waste piles in excess of permitted heights and lateral boundaries and failed to dispose of the hazardous substances and solid waste in a reasonable manner. As a result of the defendants' alleged unlawful use of their property, the plaintiffs allege that litter, dust and hazardous substances entered and remained on their property. These allegations satisfy the intent element of an action in trespass.
CT Page 7986
Accordingly, the court denies the defendants' motion to strike counts four and five. See Connecticut Light Power Co. v.Streckfus, supra, Superior Court, Docket No. 545198 (denying motion to strike trespass claim where actions of the defendant in operating snow plow equipment caused oil to leak onto the plaintiff s property).
 IV. STRICT LIABILITY
The defendants move to strike counts six through fourteen on the ground that the facts alleged are insufficient to state a claim for strict liability for an ultrahazardous activity. The plaintiffs argue that the disposal of hazardous wastes constitutes an ultrahazardous activity and, therefore, the motion to strike should be denied. Both parties agree that the issue presented is one of law that may be decided by the court on a motion to strike.
"The doctrine of strict liability for abnormally dangerous activity provides that `[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.'Restatement (Second), Torts § 519(1). This principle has been recognized by Connecticut Courts." Levenstein v. YaleUniversity, 40 Conn. Sup. 123, 125-26, 482 A.2d 724 (1984). SeeWhitman Hotel Corporation v. Elliott Watrous Engineering Co.,137 Conn. 562, 572-73, 79 A.2d 591 (1951)[3] (holding the defendant strictly liable for damages caused by blasting with dynamite); Caporale v. C.W. Blakeslee Sons, Inc.,149 Conn. 79, 86, 175 A.2d 561 (1961) (imposing strict liability for damage caused by pile-driver operation). The issue of whether an activity is abnormally dangerous is a question of law for a court to decide. Green v. Ensign-Bickford Co., 25 Conn. App. 479, 485,595 A.2d 1383 (1991).
"The courts in Connecticut and other jurisdictions which recognize the doctrine of strict liability for dangerous activities, impose it only in narrow circumstances. Typically, it has been found applicable when an activity, not regularly engaged in by the general public, is conducted in or near a heavily populated area, such that it necessarily subjects vast numbers of persons to potentially serious injury in the event of a mishap. Such activities include storing quantities of water or explosives in an unsuitable or dangerous place, maintaining inflammable CT Page 7987 liquids in quantity in the midst of a city, blasting in the midst of a city, pile driving with abnormal risk to surroundings, releasing poisonous gas or dust, and drilling oil wells or operating refineries in a thickly settled area." Levenstein v.Yale University, supra, 40 Conn. Sup. 126.
"To impose liability without fault, certain factors must be present: [1] an instrumentality capable of producing harm; [2] circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and [3] a causal relation between the activity and the injury for which damages are claimed." Caporale v. C.W. Blakeslee Sons,Inc., supra, 149 Conn. 85.
Under the doctrine of strict liability for one engaged in an ultrahazardous activity, "a plaintiff is not required to show that his loss was caused by the defendant's negligence. It is sufficient to show only that the defendant engaged in an ultrahazardous activity that caused the [plaintiff's] loss. The doctrine has traditionally been applied in cases involving blasting and explosives. . . . Connecticut's sole extension beyond blasting cases is to damage from a concussion resulting from pile driving." Green v. Ensign-Bickford Co., supra,25 Conn. App. 483. In Green, the court applied the test set forth in the Restatement and concluded that the defendant's experiments with highly explosive materials created an unavoidable risk of damage and, therefore, the defendant was strictly liable for any damage caused by the explosion. Id., 487.
Sections 519 and 520 of the Restatement (Second), Torts, address the doctrine of strict liability for ultrahazardous activities. Section 520 sets forth the following factors to be considered in determining whether an activity is abnormally dangerous: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." 3 Restatement (Second), Torts § 520 (1976). "For an activity to be abnormally dangerous, not only must it create a danger of physical harm to CT Page 7988 others, but the danger must be an abnormal one. In general, abnormal dangers arise from activities that are in themselves unusual, or from unusual risks created by more usual activities under particular circumstances. In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand, it is not necessary that each of them be present, especially if others weigh heavily. Because of the interplay of these various factors, it is not possible to reduce abnormally dangerous activities to any definition. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care." 3 Restatement (Second), supra § 520, comment (f).
In a case brought by four of the plaintiffs in the present case against several of the defendants in the present case, the court, Potter, J., granted the defendants' motion to strike count four of the plaintiffs' complaint on the ground that the acceptance of hazardous waste for disposal did not constitute an ultrahazardous activity. Deitz v. Yaworski, Inc., Superior Court, judicial district of Windham at Windham, Docket No. 046351 (March 14, 1994, Potter, J.). The court explained that the doctrine has been applied to only a narrow class of activities involving blasting and explosives. "Connecticut's sole extension beyond blasting and explosives situations is a damage claim from a concussion resulting from pile driving. . . . In the absence of authority to the contrary, the court finds that as a matter of law the defendants' activities are not ultrahazardous." Id. The court also found that the plaintiffs nevertheless failed to allege that the activities were conducted in a heavily populated area or in an otherwise unreasonable or dangerous location.Id.[4]
In Burns v. Lehigh, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 342600 (July 12, 1988, Hennessey, J.) (14 CLT 722), the court granted the defendant's motion to strike count one of the complaint because "the alleged leakage of gasoline into the subsurface soil is insufficient to state a cause of action for strict liability." The court explained, however, that "[t]he plaintiff fails to CT Page 7989 allege whether the defendant's activities were conducted in a heavily populated area or whether the gasoline was stored in an unsuitable or dangerous place." Id.
The defendants also rely on decisions of federal courts, construing Connecticut law, holding that the storage of hazardous waste and toxic solvents is not an abnormally dangerous activity. For example, in Arawana Mills Co. v. United Technologies Corp.,795 F. Sup. 1238, 1251 (D.Conn. 1992), the court held that: "It does not appear that the Connecticut Supreme Court has addressed the issue of whether the storage and use of hazardous waste is a basis for strict liability. In the absence of any direct decision by the state's highest court, a federal court, must determine what it believes the state's highest court would find if the same issue were before it. . . . I am persuaded that if given the opportunity to expand the narrowly-construed concept of `ultrahazardous' or `abnormally dangerous' activity to the storage and use of hazardous wastes, the Connecticut Supreme Court would decline to do so. Such activities are subject to extensive federal and state regulation . . . and I do not believe that the Connecticut Supreme Court would interpose an expanding common law into such matters by imposing strict liability in every case in which a plaintiff can prove that a defendant stored and used hazardous waste. Accordingly, I conclude that the storage and use of hazardous waste is not per se an `ultrahazardous' or `abnormally dangerous' activity for the purpose of imposing strict liability. I conclude further that plaintiff has failed to state a claim for strict liability in this case inasmuch as it has failed to allege any facts showing that the `circumstances and conditions' of the activity conducted by defendant on the Property `involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous.' . . . ." (Citations omitted.) See alsoNielsen v. Sioux Tools, Inc., 870 F. Sup. 435, 442 (D.Conn. 1994) (declining to extend strict liability to activities of the defendant in storing and using hazardous materials).
The cases relied upon by the defendants, however, are not dispositive as to the issue of whether the defendants may be held strictly liable for their activities. While the courts in those cases declined to impose strict liability for the various activities, including the disposal of hazardous waste, the courts did not necessarily foreclose the possibility that such an activity may be considered ultrahazardous. Instead, the courts inBurns, Arawana, and Deitz ultimately held that the plaintiffs CT Page 7990 failed to allege facts sufficient to state a claim for strict liability. "It is true that the only cases where the Supreme Court or Appellate Court in our state have found ultrahazardous activity have involved blasting. . . . use of pile driver . . . [and] conducting research with [a] highly volatile chemical . . . . But such an observation does not provide a rational basis for ipso facto holding the doctrine shouldn't be applied to other types of activity claimed to be hazardous; thus Superior Courts have held the following activity to be ultrahazardous[: the] disposal of hazardous waste." (Citations omitted.) Connecticut Water Co. v. Thomaston, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 535590 (March 4, 1996, Corradino, J.) (16 CONN. L. RPTR. 213).
Thus, in Barnes v. General Electric Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529354 (July 25, 1995, Hennessey, J.) (14 CONN. L. RPTR. 455), the court held that the disposal, burial and storage of hazardous waste by the defendants constituted an ultrahazardous activity. Specifically, the court held that "[t]his court's application of both the requirements set forth in Caporale, as well as those in section 520 of the Restatement (Second) of Torts, leads it to the conclusion that the plaintiff has sufficiently alleged facts to withstand the defendants' motion to strike . . . . The storage, burial and disposal of hazardous and toxic waste at a municipal landfill is capable of producing harms, including ground and surface water contamination, irrespective of whether due care is used. Additionally, the storage, burial and disposal of hazardous and toxic waste at a municipal landfill poses a risk of probable injury to such a degree that the activity fairly can be categorized as intrinsically dangerous to people or property. Furthermore, the court finds a sufficient causal relation between the defendant's storage, burial and disposal of hazardous and toxic wastes and the plaintiffs' alleged injuries." Id.[5]
The plaintiffs in the present case also rely on the case ofState v. Ventron, 468 A.2d 150, 160 (N.J. 1983), wherein the New Jersey Supreme Court held that the disposal of hazardous waste constituted an ultrahazardous activity. The court in that case applied the factors set forth in the Restatement (Second), supra
§ 520, and concluded that "mercury and other toxic wastes are `abnormally dangerous,' and the disposal of them, past or present, is an abnormally dangerous activity. We recognize that one engaged in the disposing of toxic waste may be performing an activity that is of some use to society. Nonetheless, `the CT Page 7991 unavoidable risk of harm that is inherent in it requires that it be carried on at his peril, rather than at the expense of the innocent person who suffers harm as a result of it.' Restatement (Second), supra, comment h at 39 Id.[6]
The court is persuaded by the cases holding that a defendant may be held strictly liable for damage resulting from the disposal of hazardous waste and concludes that the disposal of hazardous waste may constitute an ultrahazardous activity as a matter of law.
However, even though the court concludes that the disposal of hazardous waste may constitute an ultrahazardous activity, it must, nevertheless, grant the motion to strike counts six through fourteen on the ground that the facts alleged are insufficient to state a claim for strict liability for an ultrahazardous activity.
Counts six through fourteen incorporate the allegations of count one, wherein the plaintiffs allege that the defendants knowingly accepted for disposal, hazardous substances including organic compounds, semi-volatile organic and extractable compounds and toxic inorganic compounds. The plaintiffs further allege that the defendants accepted these hazardous substances without proper permits, licenses or other valid authority. As a result of these activities, the plaintiffs allege that environmental and health hazards have been created, including the contamination of ground, air and surface waters, as well as the production and dissemination of noxious odors and airborne particulates, dust and hazardous substances.
Counts six through fourteen allege that "accepting hazardous substances for disposal in a facility not designed for such use constitutes an ultrahazardous activity that necessarily and obviously exposed the person and property of [the plaintiffs] to injury and did in fact cause such injury to the person and property values of these plaintiffs." (Count 6, ¶ 14.)
While counts six through fourteen allege the existence of an instrumentality capable of producing a high degree of risk of some harm and a causal relation between the activity and the injury for which the damages are claimed, these counts fail to allege the inability to eliminate the risk of harm caused by the activity through the exercise of reasonable care or that the activity was conducted in a heavily populated area or otherwise inappropriate location. The case law is not clear as to whether a CT Page 7992 plaintiff must allege every factor set forth in the Restatement; however, a plaintiff must allege some factual predicate to support the imposition of strict liability and may not just rely on conclusory allegations that the defendants' activities are "ultrahazardous." "What the plaintiff asserts is little more than a legal conclusion; i.e., that such activity does constitute an ultrahazardous activity. The plaintiff has failed to plead sufficient facts to be weighed against the determinative factors above described. Without supporting facts in the context of the controlling factors, a cause of action for strict liability based on an ultrahazardous activity is legally insufficient."Prudential Property Gas v. Connecticut Light, Superior Court, judicial district of New Haven at Meriden, Docket No. 255016 (June 27, 1997, Gaffney, J.) (19 CONN. L. RPTR. 659). Accordingly, the motion to strike counts six through fourteen is granted.
 V. FRAUDULENT CONVEYANCES
In 1991, Connecticut adopted the Uniform Fraudulent Transfer Act, General Statutes § 52-552a et seq. Section 52-552e
provides that: "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."
Section 52-552e further provides that: "(b) In determining actual intent under subdivision (1) of subsection (a) of this section, consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or CT Page 7993 concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."
The defendants argue in support of their motion to strike counts eighteen and nineteen that the plaintiffs fail to allege sufficient facts to support a fraudulent conveyance claim. Specifically, they argue that the plaintiffs fail to allege the existence of a matured debt owed, that the conveyances rendered the defendants insolvent with respect to an actual debt, that the conveyances rendered the defendants unable to meet any existing obligations and that it is insufficient to allege that the defendants' intent was to avoid satisfying any unadjudicated claims in this case.
The court finds that the defendants' arguments are without merit. A "claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." General Statutes §52-552b(3). A creditor is a person who has a claim. General Statutes § 52-552b(4). Accordingly, the present law suit qualifies as a "claim" under the statute.
Counts eighteen and nineteen allege that subsequent to the commencement of this action, the defendants transferred property owned by them to a number of corporations and limited liability companies controlled and owned, at least in part, by the defendants, in that they share corporate officers who are immediate family members. The plaintiffs allege that these transfers were made with the intent to hinder, delay and defraud the plaintiffs as to the claims made in this action. They further allege that the transferee corporations had reason to believe that the defendants would be made insolvent by the transfers because administrative and private party environmental enforcement actions were pending or threatened at the time of the transfers. The plaintiffs also allege that the transfers were made without receiving reasonably equivalent value in exchange for the transfer. CT Page 7994
The court finds that the allegations of counts eighteen and nineteen are sufficient to state fraudulent conveyance claims. The plaintiffs allege the existence of a claim prior to the transfer, namely, the present law suit, and that the defendants made the transfer with the actual intent to hinder, delay and defraud the plaintiffs. This claim is supported by allegations that the defendants transferred assets to corporations owned and controlled by the defendants, that before the transfer was made the debtor was sued or threatened with suit, and that the transfers rendered the defendants insolvent. Accordingly, the court denies the motion to strike counts eighteen and nineteen.
 CONCLUSION
For the foregoing reasons, the court grants the defendants' motion to strike counts six through fourteen of the plaintiffs' seventh revised complaint and denies the motion to strike counts two, three, four, five, fifteen, sixteen, seventeen, eighteen, nineteen and twenty.
HALE, J.