[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE #114
The defendant has moved to strike counts two, three and five raising the following issues:
1. Whether the plaintiffs have pleaded sufficient facts satisfying the element of "intent" to withstand a motion to strike a count sounding in trespass.
2. Whether the court should, by way of a motion to strike, determine whether the plaintiffs have sufficiently alleged facts showing the defendants engaged in "ultrahazardous activity" so as to support a common law strict liability claim.
3. Whether any of the plaintiffs set forth sufficient allegations demonstrating that they are within the class of persons allowed to bring a claim under the Connecticut Unfair Trade Practices Act (CUTPA).
On October 31, 1997, the plaintiffs, Linwood S. Mather, Jr., CT Page 14793 Mather Realty Corporation and Mather Corporation filed a six-count revised complaint, alleging in count two, trespass, in count three, strict liability for an ultrahazardous activity, and in count five, a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The claims arise out of the alleged contamination of the plaintiffs' property by activities of the defendant, Birken Manufacturing Company, on its own property.
According to the allegations in the revised complaint, the plaintiffs each own or possess land on West Dudley Town Road in Bloomfield, Connecticut. The defendant owns or operates a manufacturing facility at the intersection of West Dudley Town Road and Old Windsor Road in Bloomfield, Connecticut. Since 1952, the defendant operated metal finishing, electroplating, and related manufacturing processes "which rely extensively on the generation, storage, use, treatment and disposal of hazardous and toxic chemicals and wastes." Revised Complaint, ¶ 5. On or about August 12, 1980, the defendant submitted to the United States Environmental Protection Agency (EPA) a preliminary notification pursuant to federal statutes identifying itself as a generator of, and treatment and storage facility for hazardous wastes, thereby qualifying itself as a storage and treatment facility for hazardous wastes. According to the plaintiffs, the defendant, on its property, "discharged hazardous waste from the defendant's tanks, soils, groundwater or storage areas or from some other source on the [defendant's land] into the groundwater of the State." Revised Complaint, ¶ 7.
On March 31, 1987, the EPA determined that the presence and release of hazardous wastes on the defendant's property constituted a substantial health hazard. From test results dated December 15, 1994, the hazardous wastes contaminated the soil and groundwater of the plaintiffs' properties. The defendant received notice of its noncompliance with the previous orders issued by the EPA and the Connecticut Department of Environmental Protection (DEP).
Count two, three and five repeat the foregoing allegations. In addition, count two alleges that the defendant committed a trespass on the plaintiffs' properties. Count three alleges that the defendant is strictly liable for engaging in an ultrahazardous activity. Count five alleges that the defendant violated CUTPA.
For each of the counts asserted, the plaintiffs allege that CT Page 14794 they have suffered and continue to suffer money damages, disruption of business activity, consultant and testing fees, legal expenses and exposure to future adverse regulatory actions and/or toxic waste liability.
On February 26, 1998, the defendant filed a motion to strike counts two, three and five of the plaintiffs' revised complaint. With respect to count two, the defendant argues that the plaintiffs fail to allege sufficient facts which satisfy the requisite "intent" element of a cause of action for trespass. With respect to count three, the defendant argues that strict liability is not applicable here because the defendant is not involved in an abnormally or intrinsically dangerous activity. With respect to count five, the defendant argues that the plaintiffs fail to sufficiently allege that they fall within the class of persons CUTPA was designed to protect.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted. . . ." (Citation omitted; internal quotation marks omitted.) Peter-Michael, Inc.v. Sea Shell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "A motion to strike admits all facts well pleaded." Parsons v.United Technologies Corp., 243 Conn. 66, 68, 700 A.2d 655 (1997). "[The motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachosv. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged."Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992).
"The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. MiddlesexMutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." Pamela B. v. Ment,244 Conn. 296, 308, 709 A.2d 1089 (1998). "[A] trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Internal quotation marks omitted.) Liljedahl Bros.,Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990). "A `speaking,' motion to strike (one imparting facts outside the CT Page 14795 pleadings) will not be granted . . ." (Citations omitted.) Doev. Marselle, 38 Conn. App. 360, 364, 660 A.2d 871 (1995), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996). "Where the legal grounds for [a motion to strike] are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied." Liljedahl Bros., Inc. v.Grigsby, supra, 215 Conn. 348.
"It is axiomatic that, in passing on a motion to strike based on a claim of failure to state a cause of action, we must take the facts alleged favorably to the pleader and view those facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them." (Internal quotation marks omitted.) Zellerv. Mark, 14 Conn. App. 651, 654, 542 A.2d 752 (1988).
The defendant moves to strike the second count of the plaintiffs' complaint on the ground that the plaintiffs have failed to state a cause of action for trespass because they have not sufficiently alleged the defendant's "intent." The plaintiffs argue that their allegations, when read in the light most favorable to them, and including facts necessarily implied and fairly probable thereunder, show the defendant knew of the contamination of its own property, and knew with substantial certainty that it would migrate to the plaintiffs' properties.
Specifically, the plaintiffs argue that their allegations show that the defendant received numerous notices from the EPA and the DEP regarding violations of EPA/DEP orders. Further, the plaintiffs argue that the defendant submitted reports to the EPA documenting the presence and probable migration of hazardous wastes. Taking the foregoing facts as true, the plaintiffs argue that the defendant knew of the groundwater contamination on its own property, and knew with substantial certainty that such contaminated groundwater had migrated to the plaintiffs' properties.
"The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury. Avery v. Spicer, 90 Conn. 576, 579,98 A. 135 (1916); 75 Am.Jur.2d, Trespass §§ 3, 8, 14, 25, 35."Abington Ltd. Partnership v. Talcott Mountain Science Ctr. forCT Page 14796Student Involvement, Inc., 43 Conn. Sup. 424, 427, 657 A.2d 732
(1994). "[A] trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty. . . ." (Citation omitted; internal quotation marks omitted.) Ahnert v.Getty, Superior Court, judicial district of New London at New London, Docket No. 537008 (April 4, 1997) (Handy, J.). "In order that there may be a trespass . . . [i]t is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter [on the property] . . ." (Citation omitted; internal quotation marks omitted.) Id.
In Ahnert v. Getty, supra, Superior Court, Docket No. 537008, the plaintiffs brought an action in trespass alleging that "the defendant intentionally invaded the plaintiffs' property by his placement of excessive dust thereon." Id. The plaintiffs also alleged that the defendant "knew or should have known that significant amounts of dust were settling outside of the defendant's premises, including on the plaintiffs' property." Id. Based on those allegations, the court found sufficient facts to satisfy the "intent" element in an action for trespass, and denied the defendant's motion to strike.
Unlike the plaintiffs' allegations in Ahnert, the plaintiffs' allegations in the present case, including those facts necessarily implied and fairly provable thereunder, fall short of satisfying the "intent" element in a trespass claim. Even when reading the complaint broadly, there are no facts alleged which rise to the level of showing that the defendant knew, or was substantially certain, of the impact its alleged activity had, or would have, on the plaintiffs' property. Although the plaintiffs have alleged facts which show that the defendant knew of contaminants on its own land; see Revised Complaint, Count Two, ¶¶ 7 and 9; the defendant is correct in asserting that the plaintiffs have not sufficiently alleged that the defendant knew with substantial certainty that contaminants would migrate, or had migrated, to the plaintiffs' properties.
For the reasons stated, the allegations are not legally sufficient to support an action for trespass. Accordingly, the motion to strike the second count of the revised complaint is granted.
The defendant next argues that count three of the revised CT Page 14797 complaint should be stricken on the ground that the alleged activity of the defendant, as a matter of law, is not abnormally dangerous or ultrahazardous.[1] The plaintiffs first respond by arguing that the question of what constitutes "abnormally dangerous" activity, though a question of law for the court, cannot be appropriately decided by way of a motion to strike. Instead, the plaintiffs argue, the court should hold a full evidentiary hearing on the nature of the defendant's activity before making this determination. Even if the court chooses to decide this issue without holding such a hearing, the plaintiffs argue that the defendant's generation, use, storage, treatment and disposal of hazardous wastes in the alleged circumstances and conditions is an ultrahazardous activity.
"Under [the doctrine of strict liability] a plaintiff is not required to show that his loss was caused by the defendant's negligence. It is sufficient to show only that the defendant engaged in an ultrahazardous activity that caused the defendant's loss." Green v. Ensign-Bickford Co., 25 Conn. App. 479, 482,595 A.2d 1383 (1991), cert. denied, 220 Conn. 919, 597 A.2d 343
(1991). "The issue of whether an activity is abnormally dangerous . . . is a question of law for the court to decide."Id., 485.
Connecticut courts have utilized two similar tests for determining whether an activity deserves strict liability treatment. The Appellate Court, in Green, stated that the factors for a court to consider when deciding whether an activity is abnormally dangerous are listed in § 520 of the Restatement (Second) of Torts, as follows: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes. 3 Restatement (Second), Torts § 520." Green v. Ensign-Bickford Co., supra,25 Conn. App. 486.
The Connecticut Supreme Court has similarly held that certain factors must be present in order to invoke strict liability for ultrahazardous activity: "[A]n instrumentality capable of producing harm; circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of CT Page 14798 probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed." Caporale v. C.W. Blakeslee Sons, Inc., 149 Conn. 79, 85, 175 A.2d 561 (1961).
Although the plaintiffs acknowledge the Green court's holding that a determination of what constitutes "abnormally dangerous" activity is a question of law, the plaintiffs contend that the court should not make this determination by way of a motion to strike, and should instead, hold an evidentiary hearing. This court has been confronted with such an issue before, and has not held an evidentiary hearing. See Barnes v. General Electric Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 0529354 (July 25, 1995) (Hennessey, J.) (14 CONN. L. RPTR. 455); Burns v. Lehigh, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 342600 (July 12, 1988) (Hennessey, J.) (3 C.S.C.R. 722). Moreover, the overwhelming majority of Superior Courts do not hold evidentiary hearings on such matters. See, e.g., Goodrich v. Jennings, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 150074 (May 22, 1997) (Mintz, J.) (19 CONN. L. RPTR. 542); Mirarchi v. Jennings, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 152917 (May 22, 1997) (Mintz, J.); Connecticut Water Co. v. Thomaston, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 535590 (March 4, 1996) (Corradino, J.) (16 CONN. L. RPTR. 213); Blackburn v. Miller-Stephenson Chemical Co., Superior Court, judicial district of Danbury, Docket No. 314089 (January 12, 1995) (Stodolink, J.) (13 CONN. L. RPTR. 364);Southern New England Telephone Co. v. Clifford, Superior Court, judicial district of Litchfield, Docket No. 057131 (December 10, 1991) (Pickett, J.); Michael v. Kenyon Oil Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 344098 (March 22, 1989) (O'Connor, J.) (4 C.S.C.R. 337). But seeWoodford v. Heritage Village, Superior Court, judicial district of Waterbury, Docket No. 114794 (December 21, 1994) (Sullivan. J.) (requiring evidence beyond facts in complaint in order to weigh factors for determining whether activity ultrahazardous);Polymetrics, Inc. v. Jones Chemical, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 500452 (March 2, 1992, Burns, J.) (denying motion to strike because ultrahazardous activity is mixed question of law and fact, and court requires submission of evidence). Indeed, the use of an evidentiary hearing would require the court to consider CT Page 14799 extraneous facts not within the four corners of the pleading, and thus frustrate the function and purpose of a motion to strike.[2]
The only two superior court cases that refused to decide the issue of ultrahazardous activity at the motion to strike stage; see Woodford v. Heritage Village, supra, Superior Court, Docket No. 114794; Polymetrics, Inc. v. Jones Chemical, Inc., supra, Superior Court, Docket No. 500452; based their respective decisions on different reasoning.
In Polymetrics, the plaintiff alleged that the defendant's transferring and loading of hydrochloric acid is an inherently dangerous activity. The court listed the Restatement § 520 factors as stated by the Appellate Court in Green v.Ensign-Bickford Co., supra, and concluded that the determination of whether the questioned activity is ultrahazardous involves mixed questions of law and fact. In denying the defendant's motion to strike, the court stated that "[e]vidence must be presented to the court in order for the court to form a reasonable basis of opinion as to whether or not said allegation is true." Polymetrics, Inc. v. Jones Chemical, Inc., supra, Superior Court, Docket No. 500452. It is apparent that the court viewed the plaintiff's allegation in Polymetrics as nothing more than a legal conclusion which lacked sufficient underlying factual allegations.
The Woodford court was confronted with the issue of whether the application of pesticides is an ultrahazardous activity. InWoodford, the court acknowledged that the issue is a question of law, and listed the Restatement § 520 factors which must be considered. Relying solely on the Polymetrics decision, the court concluded that the issue of ultrahazardous activity "cannot be resolved by way of a motion to strike because the court must consider evidence in order to weigh the factors outlined in Restatement (Second), § 520." Woodford v. Heritage Village,supra, Superior Court, Docket No. 114794. It is apparent, however, that the Woodford court was troubled by the fact that the defendant in that case made factual assertions not found within the complaint: "The defendant's memorandum in support of the motion to strike the second count contains factual assertions regarding the Restatement (Second) § 520 factors, which assertions are not contained in the complaint. Therefore, in order to make the determination of whether the questioned activity is ultrahazardous, the court must look beyond the facts CT Page 14800 alleged in the complaint, which is improper on a motion to strike." Woodford v. Heritage Village, supra, Superior Court, Docket No. 114794.
In the present case, unlike the plaintiff in Polymetrics, the plaintiffs' allegations do not amount to mere conclusions of law without underlying factual allegations. See Revised Complaint, ¶¶ 7 and 8. The present case, unlike the defendant inWoodford, the defendant's arguments do not rely on factual assertions not found within the complaint. Compare ConnecticutWater Co. v. Thomaston, supra, 16 CONN. L. RPTR. 542 ("[I]t might be said that the necessary predicate facts for making the determination of law can't properly be developed by means of a motion to strike. I think it's more productive to approach the problem from the point of view of determining whether the factual allegations of the complaint set forth a legally sufficient basis for a claim of ultrahazardous activity. If they don't, the claim is stricken, the plaintiff can plead over and if it does so the matter can be properly set up for the factual questions that have to be resolved in a motion for summary judgment.").
Accordingly, the court can rightly determine at the motion to strike stage whether the plaintiffs sufficiently allege facts demonstrating that the defendant engaged in an ultrahazardous activity.
The defendant first argues that its alleged activity of producing and finishing metal aircraft parts is not an abnormally dangerous activity. The defendant is correct in asserting that the alleged activity of producing and finishing metal aircraft parts does not deserve strict liability treatment. See, e.g.,Nielsen v. Sioux Tools, Inc., 870 F. Sup. 435, 442 (D. Conn. 1994) (declining to extend strict liability to activity of operating a tool repair shop); Arawana Mills Co. v. United TechnologiesCorp., 795 F. Sup. 1238, 1251 (D. Conn. 1992) (declining to characterize activity of metal finishing and servicing jet engines as ultrahazardous).
The plaintiff responds by arguing that it is not the activity of producing or finishing metal parts which deserves strict liability treatment, but rather, the defendant's alleged acts of discharging and disposing of hazardous wastes. According to the defendant, however, the storage and use of hazardous wastes is not an ultrahazardous activity in Connecticut. Furthermore, the defendant contends that the plaintiffs' own allegations CT Page 14801 acknowledge that the alleged harm suffered by the plaintiffs was not the result of the intrinsic nature of the defendant's activity, but rather from the alleged lack of proper care in conducting that activity.
The Connecticut Supreme and Appellate Courts have only imposed strict liability with respect to such activities as blasting and pile driving. See Whitman Hotel Corp. v. Elliott Watrous Engineering Co., 137 Conn. 562, 565, 79 A.2d 591 (1951) (blasting); Caporale v. C.W. Blakeslee Sons, Inc., supra,149 Conn. 85-86 (pile driving); Green v. Ensign-Bickford Co., supra,25 Conn. App. 482-83 (experimental explosions). Although certainly not bound to follow the Federal District Court for the District of Connecticut or other Superior Courts, this court looks to those courts for guidance, and uses their decisions as persuasive authority. See Barnes v. General Electric Co., supra, 14 CONN. L. RPTR. 458.
The mere storage and use of hazardous material is not an ultrahazardous activity, and has not been held to support a strict liability claim. See Skelton v. Chemical Leaman TankLines, Superior Court, judicial district of New Haven at New Haven, Docket No. 359236 (May 13, 1996) (Corradino, J.) (17 CONN. L. RPTR. 56) (distinguishing storage and use from actual disposal of toxic material). The Federal District Court for the District of Connecticut has also uniformly held that "the storage and use of hazardous materials, which result in a subsequent release" does not constitute ultrahazardous activity for which strict liability should be imposed. See Nielsen v. Sioux Tools, Inc.,supra, 870 F. Sup. 442; Arawana Mills Co. v. United TechnologiesCorp., supra, 795 F. Sup. 1252. The storage, use and disposal of hazardous waste, however, has been held to be an ultrahazardous activity. See Barnes v. General Electric Co., supra, 14 CONN. L. RPTR. 458 ("The storage, burial, and disposal of hazardous and toxic waste at a municipal landfill is capable of producing harms, including ground and surface water contamination, irrespective of whether due care is used." (emphasis added)).
In Barnes, the plaintiffs were residential property owners on a site that was formerly part of, or adjacent to, a municipal landfill. The defendant town of Southington owned and operated the landfill prior to its closing in 1967. During the periods of operation, the defendant Pratt Whitney used the landfill for its disposal of hazardous materials. After closing the landfill, the town subdivided the landfill and its surrounding area into CT Page 14802 parcels supporting residential, recreational and commercial buildings. The plaintiffs alleged, inter alia, that the defendants' handling, burning, burying, and disposing of hazardous materials at the site constituted ultrahazardous activity sufficient to state a claim for strict liability. See id., 456.
Weighing the Restatement § 520 factors, the court inBarnes concluded that the defendants' alleged activity "pose[d] a risk of probable injury to such a degree that the activity fairly can be categorized as intrinsically dangerous to people or property." Id., 458. The court also found that "the likelihood of resulting harm from the defendants' activities to property and persons, whether it is actually minimal or severe, is great." Id. In addition, the court found that such risks of harm were not capable of being mitigated by the defendants' exercise of reasonable care. Id. For those reasons, the Barnes court found the defendants' activity to be abnormally dangerous, and did not strike the claim for strict liability. Id., 459.
In the present case, unlike the plaintiffs in Nielsen,Arawana Mills Co. and Skelton, the plaintiffs do not merely allege that the defendant stored or used hazardous materials. The courts in those cases focused on the storage and use of hazardous materials which were subsequently released. Rather, the plaintiffs in the present case also allege that the defendant's manufacturing processes "rely extensively on the generation, storage, use, treatment, and disposal of hazardous and toxic chemicals and wastes." (Emphasis added.) Revised Complaint, ¶ 5. In addition, the plaintiffs allege that the defendant "discharged hazardous waste . . . into the groundwater of the State." (Emphasis added.) Revised Complaint, ¶ 7.
The plaintiffs in the present case have made similar allegations as those made in Barnes. Similar to the plaintiffs' allegations in Barnes, the defendants are accused of directlydisposing hazardous waste into the soil or the environment. Although the disposal in Barnes occurred at a municipal landfill, this distinction is not dispositive of the present case. In both instances, the plaintiffs allege that the defendants' conduct adversely affected the plaintiffs' land. Moreover, the activity of the defendant in the present case is apparently more unusual and severe than the defendants' acts in Barnes.
In Barnes, the court noted that "it was common usage to dispose of commercial wastes at a landfill . . . [and] may be an CT Page 14803 activity of some use to society." Barnes v. General Electric Co.,supra, 14 CONN. L. RPTR. 459. In the present case, however, there is apparently no "common usage" or a "benefit to society" as the plaintiffs allege that the EPA characterized the defendant's activities as unsafe and hazardous in that community. Revised Complaint, ¶ 9. Thus, upon comparison of the alleged activities of the defendant in the present case and the defendants in Barnes, it is apparent that the present case involves even greater risks, degree and likelihood of harm. It follows, therefore, that the risks, degree and likelihood of harm, as found in Barnes, should apply a fortiori to the defendants' alleged activity in the present case.
The court, upon consideration of the requirements set forth in Caporale v. C.W. Blakeslee Sons, Inc., supra, 149 Conn. 85, § 520 of the Restatement (Second) of Torts, as well as the holding in Barnes v. General Electric Co., supra, 14 CONN. L. RPTR. 459, finds that the plaintiffs' factual allegations set forth a legally sufficient basis for a claim of ultrahazardous activity on the part of the defendant.
The defendant next argues that the plaintiffs, through their own words, acknowledge the fact that their injury occurred through the alleged lack of proper care under the circumstances, and not from the intrinsic nature of an ultrahazardous activity. Specifically, the defendant claims that the plaintiffs' allegation that the defendant "permitted the escape of ultrahazardous substances;" (emphasis added) Revised Complaint, Third Count, ¶ 17; is dispositive of the ultrahazardous activity claim. That is, the defendant argues that if the court takes that allegation as true, then the activity cannot be deemed ultrahazardous — because the word "permitted" infers "negligent" or "careless" conduct, which undermines the strict liability claim.
The plaintiffs' use of the word "permitted" is not dispositive of their claim for strict liability. "[T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) Normand Josef Enterprises,Inc. v. Connecticut National Bank, 230 Conn. 486, 496,646 A.2d 1289 (1994). "We reject a formalistic, highly technical view of pleading requirements. Under modern rules of pleading, slight linguistic ambiguity should not be fatal to a cause of action." (Internal quotation marks omitted.) Fuessenich v. DiNardo, CT Page 14804195 Conn. 141, 150-51, 487 A.2d 514 (1985).
In Michael v. Kenyon Oil Co., supra, 4 C.S.C.R. 337, the defendants moved to strike the plaintiffs' strict liability for an abnormally dangerous activity claim. The plaintiffs alleged that pollutants discharged from the defendants' storage tanks contaminated the plaintiffs' water supply. The plaintiffs also alleged that "the defendants have knowingly engaged in an abnormally dangerous activity, and have permitted the escape of ultrahazardous substances, and are strictly liable to the plaintiffs for any damages resulting therefrom." (Emphasis added.) Id., 339. Under those allegations, notwithstanding the plaintiffs' use of the word "permitted," the court in Michael v.Kenyon Oil Co. held that the plaintiffs sufficiently set forth a cause of action in strict liability for an abnormally dangerous activity.
The plaintiffs in the present case have used almost identical language in their allegations as the plaintiffs in Michael v.Kenyon Oil Co.. The court will not engage in a hypertechnical reading of the plaintiffs' allegations. Accordingly, the plaintiffs' strict liability claim will not be stricken on this ground.
For the reasons stated, the motion to strike the third count of the revised complaint is denied.
The defendant moves to strike count five of the revised complaint, which alleges a violation of CUTPA. The count repeats the general factual allegations common to all counts. The count also incorporates the allegations that the defendant committed a nuisance and trespass, conducted an abnormally dangerous activity and was negligent. These acts, the plaintiffs allege, constitute violations of CUTPA.
The defendant argues that the plaintiffs have failed to state a legally sufficient claim under CUTPA because they have not alleged that they are consumers, competitors, or "other business persons" within the meaning of CUTPA. The plaintiffs respond by arguing that CUTPA must be liberally applied to afford its remedial purpose. Furthermore, the plaintiffs argue that "they are consumers, albeit unwilling consumers, of the defendant's toxic waste products." Plaintiffs' Memorandum In Opposition to Motion to Strike, p. 30. The plaintiffs also argue that they have a "sufficient business relationship" with the defendant because CT Page 14805 the plaintiffs' business has been forced to absorb the extra costs associated with the defendant's alleged contamination of their land. Finally, the plaintiffs argue that the defendant's alleged violations of environmental regulations constitute breaches of public policy. This, the plaintiffs argue, is enough to constitute a CUTPA violation.
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Willow Springs CondominiumAssn., Inc. v. Seventh BRT Development Co., 245 Conn. 1, 43,612 A.2d 742 (1998).
"Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action." General Statutes § 42-110g(a). Pursuant to General Statutes § 42-110b(a), "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."
"CUTPA is not limited to conduct involving consumer injury . . .[;] a competitor or business person can maintain a CUTPA cause of action without showing consumer injury." (Internal quotation marks omitted.) Larsen Chelsey Realty Co. v. Larsen,232 Conn. 480, 496, 656 A.2d 1009 (1995). "[CUTPA], modeled as it is on the federal act, gives protection to wronged competitors and consumers but not to the world at large or any individual who might be injured by the activities of a business entity no matter what relationship the individual had with that business, even no relationship at all." Skelton v. Chemical Leaman Tank Lines,supra, 17 CONN. L. RPTR. 60. To ensure fair competition, CUTPA CT Page 14806 gives protection to business persons "who have that type of a commercial relationship to the alleged wrongdoer which is such that the latter's unfair and deceptive acts might deleteriously affect fair competition in a particular marketplace." ConnecticutWater Co. v. Thomaston, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 535590 (April 24, 1997) (Corradino. J.). Moreover, "[t]he act wasn't meant to protect any individual or business who happened to be harmed no matter what the context or relationship between the wrongdoer and the claimant." Id.
The plaintiffs have made the following pertinent allegations concerning their relationship to the defendants, and the unfair or deceptive trade practices by the defendant. The respective properties of the defendant and the plaintiffs are in close proximity to each other. The defendant's contamination of their properties caused a diminution in the value of the plaintiffs' leasehold and real property interests. Because of the defendant's conduct, they have suffered and continue to suffer, inter alia, a disruption of business activity.
These allegations, including those facts necessarily implied and fairly provable thereunder, do not either (1) allege a consumer, competitor, or business person relationship with the defendant; see Larsen Chelsey Realty Co. v. Larsen, supra,232 Conn. 496, or (2) allege an "unfair method of competition [or] unfair or deceptive acts or practices in the conduct of any trade or commerce." See General Statutes § 42-110b(a). The plaintiffs' remaining argument concerning a consumer relationship via consumption of the defendant's toxic wastes is without merit. The plaintiffs' public policy argument need not be addressed because of their lack of factual allegations demonstrating a consumer, competitor or businessperson relationship to the defendant.
For the reasons stated, the motion to strike the fifth count of the revised complaint is granted.
 CONCLUSION
The plaintiffs' claim for trespass is legally insufficient because it fails to allege the defendant's intent or knowledge to a substantial certainty. The plaintiffs have properly alleged an ultrahazardous activity on the part of the defendant, and therefore, their strict liability claim is legally sufficient. CT Page 14807 The plaintiffs' CUTPA claim does not sufficiently allege either a consumer, competitor, or other businessperson relationship, and therefore, is legally insufficient.
For the foregoing reasons, the court denies the defendant's motion to strike as to count three, and grants the defendant's motion as to counts two and five.
Hennessey, J.