[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #114
On June 6, 2000, the plaintiffs, Gil and Ruth Gilbert, filed a three-count complaint against the defendant, Beaver Dam Association of Stratford, Inc. (Association). In the first count, the plaintiff Gil Gilbert (Gilbert),[1] alleges that he owns property that abuts and affords him the right to use Beaver Dam Lake (lake). He alleges that the Association purports to be a voluntary association of homeowners whose property abut the lake. Gilbert does not belong to the Association. Gilbert further alleges that after he purchased his property the Association adopted rules and regulations, and an amendment to its by-laws, pursuant to which it improperly attempts to: apply its by-laws, the amendment thereto, and its rules and regulations to non-members such as Gilbert; to prohibit or regulate subdivision of Gilbert's property; and to subject his property to a right of first refusal in favor of the Association. Gilbert also alleges that the by-laws and the rules and regulations are outside the chain of title to his property. He alleges that the Association adopted and recorded its by-laws amendment and its rules and regulations for the express purpose of creating a cloud on his property, preventing its subdivision, controlling its resale, and that the Association has thereby slandered Gilbert's title to his property. Gilbert seeks a declaratory judgment, declaring that: the Association has no right or claim to his property or to regulate its use, that the by-laws, by-laws amendment, and the rules and regulations of the Association do not affect his property, and that they are outside the chain of title to his property.
In the second count, Gilbert also alleges that the Association claims to have an interest in the property, and he seeks, inter alia, a judgment that the Association has no estate, interest in or encumbrance on the property, and a judgment to quiet and settle title to the property, free of the Association's by-laws, by-laws amendment, and its rules and regulations.
In the third count, Gilbert alleges that the Association violated CUTPA by engaging in unfair or deceptive acts or practices in the conduct of trade or commerce, that it improperly sought to assert dominion and CT Page 9933 control over at least one other property at the lake by virtue of the by-laws amendments and its rules and regulations, and that it has voted to enforce the by-laws and the regulations of the Association against Gilbert.
Gilbert seeks damages, attorneys' fees, a temporary and permanent injunction, and other proper relief as to his claims.
On February 16, 2001, the Association filed its answer, special defenses, and counterclaims. In the first count of its counterclaim, the Association alleges that the use of the land adjacent to the lake and the use of the lake's waters, is restricted and limited as set forth in: the deeds in the chain of title of each land owner, including that of Gilbert; the Association's by-laws, including amendments thereto consistent with the Articles of Association; and the Association's reasonable rules and regulations, including amendments thereto, and that all people who own land adjacent to the lake were required to conform their conduct to the requirements of the deeds in their chain of title by obeying the mandates of the Association's by-laws and its rules and regulations.
In paragraphs 30 to 33 of the first count, the Association specifically alleges that Gilbert constructed a four-car garage in a new location on his property in violation of the specific approval given by the Association, its by-laws as amended, the restrictions stated in Gilbert's deed, and the recorded deeds of Gilbert's predecessors in title. In paragraph 34, the Association alleges that Gilbert cleared and filled wetlands without the Association's approval, and cut and removed trees in violation of its regulations. In paragraphs 35 to 40, the Association appears to allege additional causes of action based on bad faith conduct, and for recovery of dues and lien fees, and collection costs associated therewith.
In the second count the Association alleges a cause of action for bad faith vexatious litigation, as well as a CUTPA claim. The Association alleges that Gilbert engaged in bad faith conduct, that he is engaged in the trade or occupation of a builder of individual residences, and that he knowingly presented incomplete and incorrect development plans to the Association for approval.
In the first three paragraphs of its requests for relief, the Association asks the court to order Gilbert to remove the four-car garage, to cease and desist all further activities in the wetlands, the wetlands setbacks, and restricted areas, and to restore the property to its prior condition. In the fifth paragraph the Association requests monetary damages for all damage to the waters of the lake associated with CT Page 9934 or caused by Gilbert's activities.
On March 9, 2001, Gilbert filed a motion to strike pursuant to Practice Book § 10-39(a),[2] accompanied by a memorandum of law. Gilbert asks the court to strike paragraphs 30 to 34 of the first count of the counterclaim, paragraphs 47 to 51 of the second count, and paragraphs 1, 2, 3 and 5 of the requests for relief. On March 14, 2001, the Association filed an objection to Gilbert's motion to strike, accompanied by a memorandum of law.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. Middlesex Mutual AssuranceCo., 242 Conn. 375, 378, 698 A.2d 859 (1997). "A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." Fairfield Lease Corp. v.Romano's Auto Service, 4 Conn. App. 495, 496, 495 A.2d 286 (1985). "A motion to strike is proper whenever any party wishes to contest . . . the joining of two or more causes of action which cannot properly be united in one complaint. . . ." (Internal quotation marks omitted.) Carameta v.Allstate Insurance Co., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 069943 (January 8, 2001, Grogins,J.). "Practice Book . . . § 10-39 . . . allows for a claim for relief to be stricken only if the relief sought could not be legally awarded."Pamela B. v. Ment, 244 Conn. 296, 325, 709 A.2d 1089 (1998).
"[W]here individual paragraphs standing alone do not purport to state a cause of action, a motion to strike cannot be used to attack the legal sufficiency of those paragraphs. . . . A single paragraph or paragraphs can only be attacked for insufficiency when a cause of action is therein attempted to be stated." (Citations omitted; internal quotation marks omitted.) Brennan v. New London, Superior Court, judicial district of New London at New London, Docket No. 555273 (January 19, 2001, Hurley, J.); see also Trimachi v. Workers Compensation Commission, Superior Court, judicial district of New Haven at New Haven, Docket No. 403037 (June 14, 2000, Devlin, J.) (27 Conn. L. Rptr. 469, 472).
 The Paragraphs in the First Count of the Counterclaim
Paragraphs 30 to 33 of the first count of the counterclaim state all the essential allegations of a cause of action, and that paragraph 34 CT Page 9935 states the essential allegations of a separate cause of action.[3]
Therefore, the court must determine whether these paragraphs should be stricken based on the grounds raised by Gilbert.
Gilbert argues that these paragraphs should be stricken, that the causes of action stated therein do not arise out of the transactions which are the subject of Gilbert's complaint, as required by Practice Book § 10-10, and that they are not so connected with the matter in controversy under the original complaint that their consideration is necessary for a full determination of the rights of the parties. The Association argues that the allegations do arise directly out of the same transaction, and that the same factual and legal issues are common to Gilbert's complaint and its counterclaims.
Practice Book § 10-10 provides in relevant part: "In any action for legal or equitable relief any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint. . . ." "The crucial issue is whether the subject matter of the counter-claim is so connected with the matter in controversy under the original complaint that its consideration is necessary for a full determination of the rights of the parties."Springfield-DeWitt Gardens, Inc. v. Wood, 143 Conn. 708, 713, 125 A.2d 488
(1956). "The transaction test is one of practicality, and the trial court's determination as to whether that test has been met ought not be disturbed except for an abuse of discretion. . . . Where the underlying purposes of Practice Book [§ 10-10], to wit, judicial economy, avoidance of multiplicity of litigation, and avoidance of piecemeal disposition of what is essentially one action, are thwarted rather than served by the filing of a [counterclaim], the [counterclaim] may properly be expunged." (Internal quotation marks omitted.) Wallingford v. GlenValley Associates, Inc., 190 Conn. 158, 161, 459 A.2d 525 (1983).
Paragraphs 30 to 34 and the claims stated therein require the court to determine the validity of the Association's by-laws, by-laws amendment, and its rules and regulations, as applied to Gilbert, and therefore require resolution of the same legal issues raised in Gilbert's complaint.[4]
Furthermore, "in the case of actions praying for a declaratory judgment or injunctive relief, since the remedy sought is prospective, the right to such relief is determined by the situation which has developed at the time of trial. . . ." Edward Balf Co. v. East Granby, 152 Conn. 319,323, 207 A.2d 58 (1965). Moreover, "[i]n an action for a declaratory judgment, relief consequential to the determination of the legal rights involved may be sought and granted;" Karen v. East Haddam, 146 Conn. 720, CT Page 9936 723, 155 A.2d 921 (1959); and the court is "not limited by the issues joined or by the claims of counsel;" Bania v. New Hartford, 138 Conn. 172,175, 83 A.2d 165 (1951); as long as there is an issue in dispute, an uncertainty of legal relations which requires settlement between the parties, or a sufficient practical need for the determination of the matter in the light of the circumstances. Id. In this case, issues relating to Gilbert's garage and his activities in the wetlands are in dispute, and create uncertainty in the legal relations between the parties which requires settlement. Because the rights of the parties should be determined upon the facts as they exist at the time of trial, and because Gilbert's conduct in relation to the garage and the wetlands may have already created a right to consequential relief in the Association (depending on the court's determination of the validity and applicability to Gilbert of the Association's by-laws, by-laws amendment and rules and Regulation), the causes of action stated in paragraphs 30 to 34 are clearly connected with the matter in controversy, and their consideration is necessary for a full determination of the rights of the parties.
Finally, judicial economy would not be served if the court decided not to deal with these issues. Accordingly, the motion to strike paragraphs 30 to 34 of the first count of the counterclaim are denied.
 The Paragraphs in the Second Count of the Counterclaim
With regard to paragraphs 47 to 51 of the second count Gilbert argues that the Association's cause of action for bad faith vexatious litigation is premature and that it, as well as the Association's CUTPA claim, sound in tort, and therefore present legal and factual issues unrelated to a determination of the rights in property which are the subject of Gilbert's complaint. The Association argues that these causes of action arise directly out of the allegations of Gilbert's complaint, and that they present the same factual and legal issues.
In paragraphs 47 through 50, the Association states a cause of action for vexatious litigation. It alleges that Gilbert threatened this suit against individual board members, and brought this action in order to intimidate and extort a release from the Association.[5] These paragraphs should be stricken because the claim does not arise out of the same transaction that is the subject of Gilbert's complaint.
Furthermore, because "a claim for vexatious litigation requires a plaintiff to allege that the previous lawsuit was . . . terminated in the plaintiff's favor," (Internal quotation marks omitted.) Zeller v.Consolini, 235 Conn. 417, 424, 666 A.2d 64 (1995), "it is impossible to use vexatious litigation as a counterclaim in the very suit a defendant CT Page 9937 claims is vexatious." (Internal quotation marks omitted.) Rutenberg v.Rosenblit, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 353700 (March 14, 1994, Hennessey, J.); see alsoGlazer v. Dress Barn, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 178375 (March 30, 2001,D'Andrea, J.) (29 Conn. L. Rptr. 596, 597-98). Therefore, based on the foregoing, paragraphs 47 through 50 are stricken.
In paragraph 51, the Association purports to state a cause of action based on CUTPA. This CUTPA cause of action appears to be partly based on the vexatious litigation cause of action stated in paragraphs 47 through 50, and to that extent should be stricken. To the extent the CUTPA cause of action is based on allegations unrelated to the claim of vexatious litigation,[6] the entire CUTPA claim is stricken. With regard to this cause of action, Gilbert argues that this suit has only one defendant, the Association, and that Gilbert's threat to sue other people (members of the Association) has nothing to do with his suit against the Association. This argument touches on the issue of the Association's standing.[7]
"The question of standing implicates a court's subject matter jurisdiction and, as such, may be raised at any time during the proceedings" by any of the parties, or by the court sua sponte.Weidenbacher v. Duclos, 234 Conn. 51, 54 n. 4, 661 A.2d 988 (1995). "[W]here a statute or court rule sets prerequisites to suit by a particular plaintiff, a plaintiff not meeting the statutory criteria lacks standing and the court is said to lack jurisdiction over the case."Brennan v. Fairfield, 58 Conn. App. 191, 195-96, 753 A.2d 396 (2000), rev'd on other grounds, 255 Conn. 693, 768 A.2d 433 (2001). "CUTPA has its own standing requirements. . . . The act recognizes three categories of plaintiffs: consumers, competitors and other business persons affected by unfair or deceptive acts." Ganim v. Smith Wesson Corp., Superior Court, complex litigation docket at Waterbury, Docket No. 153198 (December 10, 1999, McWeeny, J.). "Although privity, in the traditional contractual sense . . . may no longer be essential for standing under CUTPA, a claimant under CUTPA must possess at least some type of consumer relationship with the party who allegedly causes harm to him or to her;"Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 726-27, 627 A.2d 374
(1993); or some type of competitive or business relationship. LarsonChelsey Realty Co. v. Larsen, 232 Conn. 480, 496, 656 A.2d 1009 (1995).
The Association lacks a transactional, competitive or commercial relationship with Gilbert, or commercial nexus which is essential for standing under CUTPA. The Association has not alleged that it is a business competitor of Gilbert. Furthermore, the Association is not involved in any business or commercial activities with Gilbert, does not CT Page 9938 have a business relationship with Gilbert, and does not stand in a consumer relationship with Gilbert. See Ganim v. Smith Wesson Corp.,
supra, Superior Court, Docket No. 153198; Mather v. Birken Mfg. Co.,
Superior Court, judicial district of Hartford at Hartford, Docket No. 564862 (December 8, 1998, Hennessey, J.) (23 Conn. L. Rptr. 443, 449-50). "[I]t strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any `trade' or `commerce.'" Jackson v. R.G.Whipple, Inc., supra, 255 Conn. 725-26. Thus, it is submitted that the Association does not have standing to bring a CUTPA cause of action against Gilbert.
Accordingly, count two is stricken in its entirety.[8]
 The Paragraphs in the Counterclaim's Reauests for Relief
Gilbert argues that paragraphs 1, 2, 3 and 5 of the Association's requests for relief should be stricken because they relate to the claims that should be stricken. It is submitted that these requests for relief all relate to the causes of action in the first count. Because the court denied Gilbert's motion to strike as to the first count, the motion to strike these requests for relief is denied.
The motion to strike is denied as to paragraphs 30 to 34 of the first count of the counterclaim, and granted as to the second count of the counterclaim.
RUSH, J.