ALAN S. GREEN *v.* ENSIGN-BICKFORD COMPANY
(7813)

SPALLONE, O'CONNELL and LAVERY, Js.

Argued December 10, 1990—decision released August 20, 1991

*A. Paul Spinella,* with whom, on the brief, was *Susan V. Tirrell,* certified legal intern, for the appellant (plaintiff).

*James A. Wade,* with whom were *Linda L. Morkan* and, on the brief, *Kathleen C. Stone,* for the appellee (defendant).

O'CONNELL, J. This is an action to recover for injuries allegedly incurred as a result of an explosion at the defendant's facilities in Simsbury on August 15, 1984. The plaintiff's three count complaint alleged (1) an ultrahazardous activity, (2) the maintenance of an absolute nuisance, and (3) negligence. At the close of the plaintiff's case, the court granted the defendant's motion for a directed verdict as to the ultrahazardous activity and nuisance counts and reserved judgment on the negligence count. At the conclusion of the trial, the court directed a verdict against the plaintiff on the negligence count as well. The plaintiff appeals from the direction of the verdicts.

On appeal, the plaintiff claims, inter alia, that the court improperly (1) found that the defendant's activity was not an ultrahazardous activity, (2) ruled that the defendant's activity did not constitute a nuisance and (3) declined to qualify the defendant's causation witness as an expert. These claims are dispositive of the appeal. We affirm the trial court's judgment in part and reverse it in part.

The following facts are necessary to the disposition of this appeal. The defendant corporation has been a manufacturer of explosives in Simsbury for more than 150 years. Ancillary to its manufacturing, the defendant conducts research and development of new explosives. Some of the research takes place in a frangible structure designed to allow its detached wooden roof to blow off and its cinder block walls to fall outward in the event of an explosion. The structure was situated on a concrete slab surrounded on three sides by

twenty foot high earthen berm with the fourth side open towards a heavily wooded area known as the Powder Forest.

On the day of the explosion, three of the defendant's employees, all experienced professional chemists, were engaged in a research project in this building. The project entailed mixing chemicals in a reactor located twelve to fourteen feet above the floor. For reasons that will probably never be known, a colossal explosion took place, killing the researchers and completely destroying the building. At the time of the explosion, the plaintiff was in bed on the second story of his wood frame house located approximately seven eighths of a mile from the accident. Testimony as to the exact distance varied slightly at trial. The plaintiff testified that the explosion lifted him upward from his bed and threw him across the room causing him serious injuries.

I

STANDARD OF REVIEW

As a threshold matter, we observe that the plaintiff did not file a motion to set the verdict aside, thereby limiting this court to review under the plain error standard. Practice Book § 4185;[1] *Dunham* v. *Dunham,* 204

---

[1] "[Practice Book] Sec. 4185. ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interest of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

Conn. 303, 311–12, 528 A.2d 1123 (1987). "Review under the plain error doctrine 'is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *Williamson* v. *Commissioner,* 209 Conn. 310, 317, 551 A.2d 704 (1988), quoting *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985).

As a second threshold matter, we note that directed verdicts are not favored and may be directed only when the jury could not reach any other conclusion; *Kelehear* v. *Larcon, Inc.,* 22 Conn. App. 384, 386, 577 A.2d 746 (1990); or where the decisive question is a matter of law. *A-G Foods, Inc.* v. *Pepperidge Farms, Inc.,* 216 Conn. 200, 206, 579 A.2d 69 (1990). In determining whether the trial court properly directed a defendant's verdict, we consider the evidence in the light most favorable to the plaintiff. *Marron & Sipe Building & Contracting Corporation* v. *Flor,* 22 Conn. App. 689, 699, 580 A.2d 508 (1990). We analyze the plaintiff's claims against this background of the law of plain error and directed verdicts.

## II

### ULTRAHAZARDOUS ACTIVITY COUNT

#### A

##### STRICT LIABILITY

The first count is based on the doctrine of absolute or strict liability imposed on one who engages in an ultrahazardous activity. Under this doctrine, a plaintiff is not required to show that his loss was caused by the defendant's negligence. It is sufficient to show only that the defendant engaged in an ultrahazardous activity that caused the defendant's loss. The doctrine has traditionally been applied in cases involving blasting

and explosives. See D. Wright & J. Fitzgerald, Connecticut Law of Torts (3d Ed.) § 122. Connecticut's sole extension beyond blasting cases is to damage from a concussion resulting from pile driving. *Caporale* v. *C. W. Blakeslee & Sons, Inc.*, 149 Conn. 79, 85, 175 A.2d 61 (1961). Although liability was initially limited to damage directly caused by flying debris resulting from the explosion, this was in time expanded to include damage caused by concussion or vibration. *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.*, 137 Conn. 562, 570, 79 A.2d 591 (1951). The *Whitman* court held that "[a] person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the person of another to the danger of probable injury, is liable if such injury results even though he uses all proper care." Id., 565. Applying this standard to the present case, we conclude that the defendant's experiment with a highly explosive chemical created an unavoidable risk of damage, and that the risk was not alleviated by the fact that the research was conducted in a specially designed building.

The defendant argues that the blasting and pile driving cases are factually distinguishable because those cases all involve the intentional release of destructive energy. The defendant claims that in the present case the doctrine of strict liability for an ultrahazardous activity is not applicable because the explosion was unintentional. This distinction is specious because the underlying rationale for strict liability in blasting and pile driving cases is that one acts at his own peril when he creates an unavoidable risk of damage. *Caporale* v. *C. W. Blakeslee & Sons, Inc.*, supra. There is no distinction between intentional and unintentional explosions where a person creates the conditions that give rise to an unavoidable risk of damage.

The plaintiff relies on *Exner* v. *Sherman Power Construction Co.*, 54 F.2d 510 (2d Cir. 1931), to support his position that all activity involving explosives are ultrahazardous per se. In *Exner*, the court determined that a Vermont blasting company was absolutely liable for the results of an explosion whether the dynamite explodes when stored or when employed in blasting operations. "To be sure there is a greater likelihood of damage from blasting than from storage, but in each case the explosion arises from an act connected with a business conducted for profit and fraught with substantial risk and possibility of the gravest consequences." Id., 514.

In short, the *Exner* court determined that the blasting company was the insurer of any accidents associated with its use of explosives. "When, as here, the defendant, though without fault, has engaged in the perilous activity of storing large quantities of a dangerous explosive for use in his business, we think there is no justification for relieving it of liability, and that the owner of the business, rather than a third person who has no relation to the explosion, other than that of injury, should bear the loss." Id.

Similarly, in the present case, the defendant was engaged in the perilous activity of conducting research with a highly volatile chemical for use in its explosive manufacturing business. The fact that the defendant did not intend to cause an explosion with this research does not justify relieving it of liability. *Exner* and the line of cases of which it was based[2] provide a sufficient legal basis for this court to conclude that the defendant's research was an ultrahazardous activity.

[2] See, e.g., *Colton* v. *Onderdonk*, 69 Cal. 155, 10 P. 395 (1886); *McKenna* v. *Pacific Electric Railway Co.*, 104 Cal. App. 538, 286 P. 445 (1930); *Fitzsimons & Connell Co.* v. *Braun*, 199 Ill. 390, 65 N.E. 249 (1902); *Watson* v. *Mississippi River Power Co.*, 174 Iowa 23, 156 N.W. 188 (1916); *French* v. *Center Creek Powder Mfg. Co.*, 173 Mo. App. 220, 158 S.W. 723 (1913);

The defendant also claims that this court cannot impose strict liability because the trial court concluded that "there is no evidence from which the jury could reasonably find that the nitration process that led to the explosion created an unavoidable risk of harm." The defendant argues that without a finding of unavoidable risk, its research cannot be legally labeled an ultrahazardous activity. The issue of whether an activity is abnormally dangerous, however, is a question of law for a court to decide. *Caporale* v. *C. W. Blakeslee & Sons, Inc.,* supra, 86; *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.,* supra, 565; D. Wright & J. Fitzgerald, supra; 3 Restatement (Second), Torts § 520, comment (l). Thus, the trial court's conclusion that the jury would have inadequate evidence before it to decide whether the defendant's activity was ultrahazardous was erroneous.

Sections 519 and 520 of 3 Restatement (Second), Torts, address the doctrine of strict liability for ultrahazardous activities. Section 519 provides in pertinent part: "(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Comment (d) of the Restatement points out that the liability of § 519 is not based on any intent of the defendant to do harm to the plaintiff; rather, it arises out of the abnormal danger of the activity itself, and the risk that it creates of harm to those in the vicinity. "It is founded upon a policy of law that

*Longtin* v. *Persell,* 30 Mont. 306, 76 P. 699 (1904); *Louden* v. *City of Cincinnati,* 90 Ohio St. 144, 106 N.E. 970 (1914); *Bradford Glycerine Co.* v. *St. Mary's Woolen Mfg. Co.,* 60 Ohio St. 560, 54 N.E. 528 (1899); *Hickey* v. *McCabe & Bihler,* 30 R.I. 346, 75 A. 404 (1910); *Feinberg* v. *Wisconsin Granite Co.,* 54 S.D. 643, 224 N.W. 184 (1929); *Schade Brewing Co.* v. *Chicago, M. & St. P. Ry. Co.,* 79 Wash. 651, 140 P. 897 (1914); *Patrick* v. *Smith,* 75 Wash. 407, 134 P. 1076 (1913).

imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against the harm when it does in fact occur." Id.

The factors for a court to consider in determining whether an activity is abnormally dangerous are listed in § 520 of the Restatement as: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." 3 Restatement (Second), Torts § 520.

The plaintiff asserts that § 520 requires this court to conclude that the manufacturing of explosives is an abnormally dangerous activity requiring the defendant to be strictly liable for any injuries stemming from its business. It is important to note that comment (f) of § 520 clearly states that all of the factors need not be present for an activity to be considered abnormally dangerous. Comment (f) to § 520 provides: "In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. *On the other hand it is not necessary that each of them be present, especially if others weigh heavily.*" (Emphasis added.)

The first three factors all involve the degree of risk, harm and difficulty of eliminating the risk inherent in the activity. Here, the defendant's activity, the use of a highly volatile chemical in a specially designed build-

ing located away from the defendant's main facility, satisfied these three factors. The fourth factor, that the activity not be a matter of common usage, is also easily met. In fact, the defendant's activity is expressly addressed in comment (i) which states that "the manufacture, storage, transportation and use of high explosives . . . are carried on by only a comparatively small number of persons and therefore are not matters of common usage."

The fifth factor, inappropriateness of the activity to the place where it is carried on, is satisfied by the defendant's experimentation with explosives in a residential area. The sixth factor encompasses the extent to which the activity's value to the community is outweighed by its dangerous attributes. The record is devoid of facts to satisfy this but, as stated earlier, all six factors do not need to be satisfied in order to find that the defendant's activity is ultrahazardous. Comment (h) provides that "[a] combination of the factors stated in clauses (a), (b) and (c), or sometimes any of them alone, is commonly expressed by saying the activity is 'ultrahazardous' or 'extra hazardous. . . .' "

In light of our review of the six factors required by § 520 and our conclusion that five of these factors were satisfied by the defendant's research activity, we conclude that the defendant is strictly liable for any damage caused by the explosion. Therefore, it was plain error for the trial court to grant the defendant's motion for a directed verdict on count one on the basis that the doctrine of strict liability did not apply.

## B

### PROXIMATE CAUSE

We next turn to the question of whether the plaintiff failed to present adequate evidence that the explo-

sion was the proximate cause of his injuries. When the causation issue involved goes beyond the field of ordinary knowledge and experience of judges and jurors, expert testimony is required.[3] See *Franchey* v. *Hannes,* 155 Conn. 663, 666, 237 A.2d 364 (1967); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 7.16.5. Relying on this rule, the defendant argues that whether an explosion occurring at or above the surface of the earth can create a seismic wave capable of throwing a man nearly a mile away out of bed is an issue well beyond the knowledge of the ordinary layman and thus requires expert testimony.

In an effort to prove this theory of causation, the plaintiff offered Wayne Edsall as an expert witness. In an especially thorough hearing that lasted a day and a half, the court examined Edsall's qualifications. The evidence showed that Edsall was on the faculty of the United States Naval Academy and had extensive experience with explosives. His qualifications included a Bachelor's Degree in Geology with study in chemical engineering, a Master's Degree in Earth Geology, a Ph.D. in Marine Geology with doctoral work related to the Earth Geology, membership in the Geological Society of America and the American Geophysical Union, certification as a professional geologist by the American Association of Professional Geologists, work with the United States Navy since 1963 and at the Naval Academy since 1969, work for the United States Department of Energy in the Johns Hopkins University applied physics laboratory, seismic activity studies for Alpine Geophysical Associates and the United States Geological Study. Since 1971, he has done independent consulting on the effect of physical forces as

---

[3] In *King* v. *New Haven Trap Rock Co.,* 146 Conn. 482, 483, 152 A.2d 303 (1959), the court held that expert testimony is not required to prove causation in a blasting case but it does not bar a plaintiff from using such testimony to establish causation.

generated by explosive devices and has held advisory positions to the government on geological issues.

The court refused to qualify Edsall as an expert on the ground that his experience in oceanic seismography and seismic waves initiated by underground explosions did not make him competent to testify as an expert on the effects of an above ground explosion on dry land. The court was effectively requiring that the proposed expert have experience with the exact problem before the court. This goes beyond the standard for admitting expert testimony. " 'The true test of the admissibility of such testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter, but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the Court or jury in determining the questions at issue.' " *Jaffe* v. *State Department of Health,* 135 Conn. 339, 348, 64 A.2d 330 (1949), quoting *Taylor* v. *Town of Monroe,* 43 Conn. 36, 44 (1875); see C. Tait & J. LaPlante, supra, § 7.16.1. Edsall unquestionably possessed "peculiar knowledge or experience, not common to the world" in the field of explosives and resulting seismic effects which could have assisted the jury. " 'The underlying principle is that if any reasonable qualifications can be established, the objection goes to the weight rather than to the admissibility of the evidence.' " *Sanderson* v. *Bob's Coaster Corporation,* 133 Conn. 677, 682, 54 A.2d 270 (1947), quoting *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600 (1940); 2 Wigmore, Evidence (3d Ed.) § 561. It was plain error for the trial court to refuse to qualify Edsall as an expert thereby preventing the plaintiff from establishing a causal link between his injuries and the acts of the defendant.

## III

### Nuisance Count

The plaintiff next argues that the court committed plain error when it concluded that the plaintiff's activity did not constitute an absolute nuisance and directed a verdict in the defendant's favor on the second count. To succeed in a nuisance action, a plaintiff must establish four elements: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the defendant's land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiff's injuries and damages." *Filisko* v. *Bridgeport Hydraulic Co.,* 176 Conn. 33, 35–36, 404 A.2d 889 (1978).

Claims of nuisance fall into two discrete categories: (1) absolute nuisance and (2) negligent nuisance.[4] The principal distinction between the two is that an absolute nuisance has the added requirement that the conduct be intentional. *Monick* v. *Greenwich,* 144 Conn. 608, 611, 136 A.2d 501 (1957). " 'Intentional,' in this context, means 'not that a wrong or the existence of a nuisance was intended, but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance.' " *Dingwell* v. *Litchfield,* 4 Conn. App. 621, 624, 496 A.2d 213 (1985), quoting *Beckwith* v. *Stratford,* 129 Conn. 506, 510–11, 29 A.2d 775 (1942).

Applied to the present case, the plaintiff was required to demonstrate that the defendant intended to bring

---

[4] Actions against public authorities include a third category resulting from conduct of a public authority which is in violation of a statute. See *Dingwell* v. *Litchfield,* 4 Conn. App. 621, 624, 496 A.2d 213 (1985).

about conditions that resulted in the explosion. The last thing in the world that the now deceased agents of the defendant wanted was to create conditions that would result in an explosion and consequently their deaths. The plaintiff claims that the explosion, not the research or manufacturing of explosives, constituted an absolute nuisance. Additionally, the plaintiff's brief does not argue the missing element of intent. Because the lack of intent to create an absolute nuisance is dispositive of the plaintiff's claim on this count, we do not reach the issue of whether there was evidence tending to prove the other elements of absolute nuisance.

In view of the absence of evidence that the defendant intended to create to the conditions that brought about the explosion, we conclude that the trial court did not commit plain error by directing a verdict in favor of the defendant on the nuisance count.

## IV

### Negligence Count

We next consider whether the trial court improperly directed a verdict for the defendant on the negligence count. It is axiomatic that a plaintiff must establish a causal relation between the defendant's negligence and his injuries. *Shelnitz* v. *Greenberg,* 200 Conn. 58, 66, 509 A.2d 1023 (1986). In our previous discussion of causation in the strict liability portion of this opinion, we held that refusal to qualify Edsall was plain error. That analysis also pertains to the negligence count. The verdict should not have been directed on this count.

## V

### Other Claims

We do not reach the issues relating to evidentiary rulings and refusal of the trial court to permit an

amendment of the complaint because they do not qualify for review under the plain error rule.

The judgment is affirmed on the second count and reversed on the first and third counts, and the case is remanded for a new trial on the first and third counts.

In this opinion the other judges concurred.