[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE (No. 101)
On the day after the Declaration of Independence was signed, John Adams wrote to a friend that the event should be celebrated with "bonfires and illuminations, from one end of this continent to the other, from this time forward, for evermore." Following Adams' precept, generations of Americans have celebrated the Fourth of July with displays of fireworks. As is very well known, not all of these displays are legal. In Connecticut, such displays are illegal when not conducted pursuant to a permit. Conn. Gen. Stat. § 29.357. Unhappily, just as it is predictable that many fireworks displays will be conducted without a permit no matter what the authorities do, it is equally predictable that a few people will be injured, some very seriously, by the fireworks illegally discharged. This case involves an allegation of such an injury. The interesting question presented is whether an illegal fireworks display is an abnormally dangerous activity to which the principle of strict liability in tort ought to be applied. For the reasons that follow, the answer to this question is in the affirmative.
Because the question is presented in the context of a motion to strike, the facts asserted in the complaint must be taken as true. The plaintiff Alfred Lipka, alleges that on July 4, 1997, the defendants, Mark and Marie DiLungo, hosted "tan illegal fireworks show" on property that they owned. Lipka claims that he was struck in the forehead by one of the fireworks and suffered serious injuries. The complaint consists of four counts, but only one of those counts — the second — is in question here. Paragraph 5 of that count asserts that, "The defendants, Mark and Marie DiLungo, are strictly liable to the plaintiff, Alfred Lipka, for the plaintiffs injuries caused by the firework because the defendants engaged in an ultra hazardous activity of hosting and/or operating an illegal fireworks display, and this ultra hazardous activity caused the plaintiffs serious and painful loss."
Alfred Lipka and his wife, Cheryl Lipka (who claims loss of consortium in a count not now before the Court), commenced this action by service of process on December 9, 1997. On February 10, 1998, the defendants filed the motion to strike now before the CT Page 4864-b Court. The motion is directed only at the second count of the complaint. It contends that, A fireworks display is not an ultrahazardous activity so as to be subject to the doctrine of strict liability." The motion was heard on March 6, 2000.
The second count is based on the doctrine of strict liability imposed on persons who engage in what the FIRST RESTATEMENT refers to as "ultrahazardous activity, " RESTATEMENT (FIRST) OF TORTS § 520 (1938), and the SECOND RESTATEMENT terms "abnormally dangerous activity, " RESTATEMENT (SECOND) OF TORTS § 520 (1977). In Connecticut, "[t]he doctrine has traditionally been applied in cases involving blasting and explosives, " Green v. Ensign-Bickford Co., 25 Conn. App. 479,482-83, 595 A.2d 1383, cert. denied, 220 Conn. 919, 597 A.2d 341
(1991), and has been extended only to pile driving; Caporale v.C.W. Blakeslee Sons, Inc., 149 Conn. 79, 175 A.2d 61 (1961); and the storage of explosives; Green v. Ensign-Bickford, supra.
"The issue of whether an activity is abnormally dangerous . . . is a question of law for a court to decide." Id. at 485.
The question of whether a lawful fireworks display is an abnormally dangerous activity has divided the courts that have considered it. Compare Miller v. Westcor Limited Partnership,831 P.2d 386 (Ariz.Ct.App. 1992), and Klein v. Pyrodyne Corp.,810 P.2d 917 (Wash. 1991) (imposing strict liability), with Litzmanv. Humboldt County, 273 P.2d 82 (Cal.Dist.Ct.App. 1954);Cadena v. Chicago Fireworks Manufacturing Co., 697 N.E.2d 802
(Ill.App.Ct.), cert. denied, 706 N.E.2d 495 (Ill. 1998), andHaddon v. Lotito, 161 A.2d 160 (Pa. 1960) (finding no strict liability). In contrast, the question of whether an unlawful
fireworks display is an activity of this description has received little modern judicial attention.
Haddon, while concluding that the doctrine of strict liability should not be applied to lawful fireworks displays, suggests that unlawful displays require a different analysis. "Where one discharges fireworks illegally or in such a manner as to amount to a nuisance and causes injury to another, some jurisdictions have held that liability follows without more." 161 A.2d at 162.
Haddon does not elaborate on this analysis. It cites two cases for this proposition: Gerrard v. Porcheddu, 243 Ill. App. 562
(1927), and Doughty v. Atlantic City Business League, 80 A. 473
(N.J. 1911). Neither Gerrard nor Doughty, however, involve CT Page 4864-c displays that were illegal as such. Rather, each of these cases appear to involve legal fireworks that caused damage by falling on the property of another. Gerrard involved a firework shot by the defendant from his property that landed on the roof of the plaintiffs house and caused a fire that burned it down. The defendant claimed that his act was not an unlawful one, but the court found that the act of "[t]hrowing something over on to the land of another, which sets a fire or causes damage, is a trespass, and is unlawful." 243 Ill. App. at 566. Similarly,Doughty involved a fireworks display on a vacant lot that set a fire on the plaintiffs property. This act was held to be a nuisance. 80 A. at 473.
Gerrard and Doughty follow closely in the path of the most famous case imposing strict liability, Rylands v. Fletcher,
[1868] 3 L.R. 330 (H.L. 1868). Rylands involved a newly excavated reservoir which burst downward as it was being filled for the first time and flooded a nearby coal mine. The law was memorably pronounced by Blackburn, J., in the Court of Exchequer Chamber and adopted by Cairns, L.C. in the House of Lords:
 We think that the true rule of law is, that The person who, for his own purposes, brings on his land and keeps there anything likely to do mischief if it escapes must keep it at his peril; and if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape. . . . The person whose grass or corn is eaten down by the escaping cattle of his neighbor, or whose mine is flooded by the water from his neighbor's reservoir, or whose cellar is invaded by the filth of his neighbor's privy, or whose habitation is made unhealthy by the fumes and noisome vapours of his neighbour's alkali works, is damnified without any fault of his own; and it seems but reasonable and just that the neighbour who has brought something on his own property (which was not naturally there), harmless to others so long as it is confined to his own property, but which he knows will be mischievous if it gets on his neighbour's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there no mischief could have accrued, and it seems but just that he should at his peril keep it there, so that no mischief may accrue, or answer for the natural and anticipated consequence. And upon authority this we think is established, whether the things so brought be beasts, or water, or filth, or stenches.
CT Page 4864-dId. at 339-40.
The Rylands doctrine, thus stated, is notable for the wide variety of "things so brought" on land to which it purportedly applies. It has been limited in the land of its birth to cases in which there has been an "escape" from land under the control of the defendant; Read v. J. Lyons Co., [1947] A.C. 156, 173 (H.L. 1946); but, on this side of the Atlantic, the doctrine has been more generally applied to "abnormally dangerous activities." RESTATEMENT (SECOND) OF TORTS, supra, § 520. See
PROSSER AND KEETON ON THE LAW OF TORTS 551-55 (5th ed. 1984). The appropriate judicial task in jurisdictions adopting this latter rule is to determine whether the activity before the court is an "abnormally dangerous" one.
The Appellate Court has determined that, in Connecticut, the analysis in question is to be made with reference to the six factors identified in § 520 of the SECOND RESTATEMENT. Greenv. Ensign-Bickford Co., supra, 25 Conn. App. at 486. Sec. 520 provides that:
 In determining whether an activity is abnormally dangerous, the following factors are to be considered:
 (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
 (b) likelihood that the harm that results from it will be great;
 (c) inability to eliminate the risk by the exercise of reasonable care;
 (d) extent to which the activity is not a matter of common usage;
 (e) inappropriateness of the activity to the place where it is carried on; and
 (f) extent to which its value to the community is outweighed by its dangerous attributes.
The characteristics of an illegal fireworks display must now be reviewed with these six factors in mind. CT Page 4864-e
(a) Existence of a high degree of risk of some harm. Even jurists opposing the imposition of strict liability with respect to lawful fireworks displays have acknowledged that such displays satisfy this factor. See Cadena v. Chicago FireworksManufacturing Co., supra, 697 N.E.2d at 814; Klein v. PyrodyneCorp., supra, 810 P.2d at 926 (Dolliver, J., concurring). This concession may be unnecessary in the case of properly regulated lawful displays. Such displays are watched by millions of people with comparatively few injuries. With respect to unlawful
displays, however, the degree of risk will inevitably be increased. The restrictions placed on lawful fireworks displays;see, e.g., Conn. Agencies Regs. § 29-357-4a.1; are intended to reduce the degree of risk involved. The absence of such restrictions will necessarily increase the degree of risk. Unless the proper precautions are taken, injury might reasonably be expected to occur. See Burbee v. McFarland, 114 Conn. 56,157 A.2d 647 (1931). Factor (a) is established here.
(b) Likelihood that the resulting harm will be great. Fireworks are capable of causing extremely serious injuries. If they cause harm, the harm is likely to be great. Factor (b) is easily established here.
(c) Inability to eliminate the risk by the exercise of duecare. Conn. Gen. Stat. § 29-357 is a legislative determination that the risk associated with fireworks displays will be reduced by the exercise of due care. That risk, however, will not be eliminated. Our Supreme Court opined long ago that, the use of "firecrackers and other squibs" is not ordinarily dangerous. Pope v. City of New Haven, 91 Conn. 79, 83, 99 A. 331
(1916). Modem fireworks, however, are considerably more powerful than the "firecrackers and other squibs" discharged in that bygone era. Fireworks are, by definition, explosive devices; Conn. Gen. Stat. § 29-356; and incidents of injuries to spectators of carefully conducted municipal displays will occasionally occur. Conn. Gen. Stat. § 29-359 recognizes this fact by requiring persons conducting lawful fireworks displays to "furnish proof of financial responsibility to satisfy claims for damages" resulting from such displays. The crucial factor is "the unavoidable risk remaining in the activity." RESTATEMENT (SECOND) OF TORTS, supra, § 520, cmt. h. These considerations support the conclusion that an unavoidable risk remains even in the case of a lawful fireworks display. The risk inevitably will be CT Page 4864-f increased in the case of an unlawful display. Factor (c) is established here.
(d) Extent to which the activity is not a matter of commonusage. Illegal fireworks displays are common on the Fourth of July. But this factor is not, in itself, sufficient to eliminate factor (d). Factor (d) is intended to eliminate common lawful
activities, such as the operation of automobiles, from the ambit of strict liability. RESTATEMENT (SECOND) OF TORTS, supra, § 520, cmt. i. It would be anomalous for the law to condone common illegal activity simply because it is common. To take an unhappy modem example, the inherent dangers of controlled substances are not diminished by the fact that the use of such substances is common in some areas. As a matter of policy, the common usage of an illegal activity should not be considered in determining whether strict liability should apply.
(e) Inappropriateness of the activity to the place where it iscarried on. The complaint in this case does not state facts sufficient to address this factor. Nor, because the issue arises on a motion to strike, can the Court address the defendants' factual contentions on this factor. Consequently, this factor will not be considered.
(f) Value to the community. Lawful fireworks displays have a value to the community that outweighs their dangerous attributes.Pope v. City of New Haven, supra, 91 Conn. at 81. By enacting Conn. Gen. Stat. § 29-357, however, the legislature has made a determination that the value of unlawful displays is outweighed by their dangerousness. This legislative determination is eminently reasonable. Factor (f) is satisfied in this case.
This analysis establishes that each of the four factors — (a), (b), (c), and (f) — that properly may be considered in the context of this case is satisfied with respect to unlawful fireworks displays. It is not necessary that each of the six § 520 factors be present, "especially if others weigh heavily." RESTATEMENT (SECOND) OF TORTS, supra, § 520, cmt. f. The plaintiff has appropriately stated a case of strict liability in tort under the RESTATEMENT.
Judicial decisions in tort law should not be strictly mechanical affairs, made by toting up the factors. Modern tort law has a moral basis, and this is why fault has become "the CT Page 4864-g dominant principle of liability." 3 FOWLER V. HARPER, FLEMING JAMES, JR. OSCAR S. GRAY, THE LAW OF TORTS § 14.3 at 195 (2d ed. 1986). This trend explains why the principle of strict liability in tort has been limited in its application. It also explains the case law declining to extend this principle tolawful fireworks displays, since such displays are legitimized and often promoted by governmental entities. But the policy analysis applicable to unlawful displays is quite different. The fact that unsanctioned fireworks displays are illegal is extremely well known. It is equally well known that the precise reason for the illegality of such displays is their dangerousness. Strict liability under these circumstances can hardly be said to be a trap for the unwary. If a person deliberately and consciously engages in a highly dangerous activity involving explosive devices, knowing that activity to be illegal, the intentional illegality itself provides a sufficient policy basis on which to allocate the risk of loss to the person engaging in such highly dangerous behavior. Such a rule has the virtue of shifting the risk of loss on the basis of culpability and upholding the rule of law.
The motion to strike is denied.
Jon C. Blue, Judge of the Superior Court