[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action arises out of an incident that can be characterized without hyperbole as a homeowner's worst nightmare. The revised complaint alleges that on September 17, 1996, an employee of the defendant, placed the oil hose from his oil delivery truck into an abandoned filler pipe that was cut off in the basement of the plaintiffs home between the foundation and the finished basement walls. The oil was pumped throughout the plaintiffs basement and walls.
The defendant seeks to strike four counts of the plaintiffs revised complaint dated March 24, 1999. Claiming that each count fails to allege a legally sufficient cause of action, the defendant argues that count two fails to allege a recklessness count but simply realleges the negligence count; that count three fails to allege an essential element of trespass, namely intent; that count four is legally insufficient under strict liability because oil delivery is not an ultrahazardous activity; and that count five fails to allege an essential element of nuisance, namely control over the plaintiffs property. In his opposing memorandum the plaintiff withdrew the fifth count and agreed to revise his complaint to reflect that withdrawal. CT Page 9063
"A motion to strike challenges the legal sufficiency of a pleading."Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985); see Practice Book § 10-39. "Like the demurrer it admits all facts well pleaded." (Emphasis in original.) Mingachos v. CBS, Inc., supra, 196 Conn. 108
(1985). Further, the facts as pleaded in the complaint must be construed most favorably towards the plaintiff. Gordon v. Bridgeport HousingAuthority, 208 Conn. 161, 170 (1988). Accordingly, the facts provable under the allegations support a cause of action, the motion must fail.
The court is limited "to a consideration of the facts alleged in the complaint. A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." Doe v. Marselle, 38 Conn. App. 360, 364
(1995), rev'd on other grounds, 236 Conn, 845 (1996); see also Cavallov. Derby Savings Bank, 188 Conn. 281, 285-86 (1982). "Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied." LilijedahlBros., Inc. v. Grigsby, 215 Conn. 345, 348 (1990).
"Nothing in our cases suggests, however, that every argument in a motion to strike is rendered defective by the moving party's allegation of some fact not contained in the pleadings, regardless of whether that fact is relevant for each argument in the motion. We can see no reason to introduce such a rule, since a party whose motion to strike has been denied on the ground that it speaks on a fact that is not relevant to all of the legal claims could simply file a new motion limited to the arguments that do not depend upon that allegation." Id. 348-49.
"'Although the motion to strike admits all facts well pleaded, it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings."' (Citations omitted.) Emerick v. Kuhn,52 Conn. App. 724, 739 (1999), cert. denied, 249 Conn. 929, cert. denied. 120 S.Ct. 500, 145 L.Ed.2d 386.
As to the second count of the revised complaint, the plaintiff realleges the factual allegations of the first count, which sounds in negligence, and adds claims for attorney's fees, medical bills and damages for loss of property value to his home. In addition, he alleges, that the defendant's actions were "willful, wanton, malicious, and outrageous, and were undertaken in deliberate disregard of; or with reckless indifference to, the rights and interest of Plaintiff." (¶ 27, count two, March 25, 1999 revised complaint). In light of the detailed allegations of the first count which include not only the delivery of the oil but the defendant's actions thereafter in hiring a cleaning company, the court denies the motion to strike count two. Recklessness is "such conduct as indicates a reckless disregard of the CT Page 9064 just rights or safety of others or of the consequences of the action." (Internal quotation marks omitted.) Elliott v. Waterbury, 245 Conn. 385,415 (1998). There are sufficient facts alleged here to support the recklessness count. Accordingly, the motion to strike count two is denied.
Turning to the third count, which sounds in trespass, the defendant claims that the plaintiff has failed to allege that its actions were done intentionally. The elements of a common law trespass action are well established: a plaintiff must show "ownership or possessory interest in property; the physical invasion, entry or intrusion by defendant which affects the plaintiffs possessory rights; intent to do that which causes the invasion and a direct injury to the plaintiffs' property." Caltabianov. Jimmo, Superior Court judicial district of Middlesex, Docket No. 67609 (May 5, 1995, Higgins, J.). quoting Avery v. Spicer, 90 Conn. 576, 579, (1916).
Here, the plaintiff has alleged facts that support an inference of intent. See Amodio v. Cunningham, 182 Conn. 80, 83 (1980); DeMello v.Plainville, 170 Conn. 675, 677 (1976) ("fact necessarily implied from the allegations are taken as admitted"). The plaintiff alleges that the defendant's employee purposely filled the filler pipe on the plaintiffs property with oil which then passed into the walls of the basement. Those facts are sufficient to establish the element of intent for trespass. The motion to strike count three is denied.
Finally, the defendant moves to strike count four which sounds in strict liability. As the Appellate Court noted in Green v. EnsignBickford, 25 Conn. App. 479, 482 (1991), under the strict liability doctrine "a plaintiff is not required to show that his loss was caused by the defendant's negligence." What is sufficient is a showing that the defendant "engaged in an ultrahazardous activity that caused the defendant's loss." Id. Here, the complaint alleges that the defendant disposed of home heating oil in his home, and that this substance was toxic and hazardous so that the disposal was ultrahazardous activity.
The Supreme Court has set forth the factors in determining whether to invoke the strict liability doctrine.
To impose liability without fault, certain factors must be present:
 an instrumentality capable of producing harm; circumstances and conditions in its use which, irrespective of a lawful purpose of due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically CT Page 9065 dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed.
Caporale v. C.W. Blakeslee Sons Inc., 149 Conn. 79, 85 (1961) (holding that use of a pile driver capable of delivering 15,000 foot-pounds of energy was intrinsically dangerous.)
The Appellate Court adopted the test found in § 520 of the Restatement (Second) of Torts. It states that: "[t]he factors for a court to consider in determining whether an activity is abnormally dangerous are . . . : (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on: and (f) extent to which its value to the community is outweighed by its dangerous attributes. 3 Restatement (Second), Torts § 520." Green v. Ensign-Bickford Company, supra,25 Conn. App. 486 (holding that experimentation with explosives created an unavoidable risk of damage). All six factors do not need to be satisfied in order to find that the defendant's activity is ultrahazardous, especially if some weigh heavily. Id.
Under the Restatement and Caporale tests, the results here are the same. Applying the test set forth in Caporale, the defendant was not engaged in an ultrahazardous activity when it erroneously delivered oil to the plaintiffs home. While petroleum products such as home heating oil may have harmful effects, the delivery of such products by truck involves a low risk of probable injury when done so lawfully and with due care. See The Connecticut Water Co. v. Thomaston, Superior Court, judicial district of Hartford at Hartford, Docket No. 535590 (March 4, 1996, Corradino, J.)("the fact that a substance can be dangerous . . . does not mean that when the substance is reasonably handled . . . as part of the industrial or business activity it is used in, its use or storage should be defined as an ultrahazardous activity"). The risks inherent in the delivery of this fuel are presumably low when such deliveries are carried out properly. This is far different from the use of a pile driver which may, even when properly operated with due care, cause considerable damage. See Caporale v. C.W. Blakeslee Sons, Inc., supra,149 Conn. 85-86.
Applying the test set forth in Green v. Ensign-Bickford Company, supra, 25 Conn. App. 486, under the Restatement, the delivery of home heating oil is not an ultrahazardous activity. First, it is questionable whether a high degree of risk of harm to the person, land or chattels of CT Page 9066 others exists when home heating oil is delivered. While the fact that the vast majority of deliveries of home heating oil occur without incident is not necessarily sufficient to determine that the degree of risk of harm in delivering oil is low, it certainly lends credence to such a conclusion.
Second, great harm need not necessarily result when an accident occurs during the delivery of home heating oil. While the harm in the present case was undoubtedly great, lesser spills, etc. may also occur, producing far less dramatic effects in terms of damage to person and property.
Third, the risk may be substantially reduced by the exercise of reasonable care. It is hard to imagine what, if any, harm could result from the delivery of home heating oil when reasonable care is exercised.
Fourth, this is a common activity in this region of the country.
 The usual dangers resulting from an activity that is one of common usage are not regarded as abnormal, even though a serious risk of harm cannot be eliminated by all reasonable care. The difference is sometimes not so much one of the activity itself as of the manner in which it is carried on. Water collected in a large quantity in a hillside reservoir in the midst of a city or in coal mining country is not the activity of any considerable portion of the population, and may therefore be regarded as abnormally dangerous; while water in a cistern or in household pipes or in a barnyard tank supplying cattle, although it may involve much the same danger of escape, differing only in degree if at all, still is a matter of common usage and therefore not abnormal. The same is true of gas and electricity in household pipes and wires, as contrasted with large gas storage tanks or high tension power lines.
3 Restatement (Second), Torts § 520, comment i.
Fifth, the delivery of home heating oil in a residential area is appropriate. This is not a situation where it is alleged, for example, that the defendant stored large quantities of petroleum in the midst of a residential neighborhood. Finally, the value to the community in having home delivery of heating oil outweighs any dangerous attributes of the activity.
It is also important to consider the purpose of the doctrine of strict CT Page 9067 liability. "[O]ne of the primary reasons for the development of the whole doctrine in Rylands v. Fletcher, L.R. 1 Ex. 265 aff. LR 3 H.L. 330 (1868) was that existing nuisance and trespass doctrine didn't provide relief for a party injured by discharges from the defendant's land. . . ." TheConnecticut Water Co. v. Thomaston, supra, Docket No. 535590. As Judge Corradino noted, "defining something as an ultrahazardous activity is a weighty step since if this is done it would seem to me cost of capital might very well increase as well as the cost of insurance coverage of existing businesses. This would be unfortunate if existing common law remedies gave adequate protection to allegedly injured parties." Id. Here, there are remedies available to the plaintiff for an adequate recovery for his injuries and losses.
Accordingly, the motion to strike the fourth count is granted.
In summary, the motion to strike is denied as to count two and three and granted as to count four.
DiPentima, J.