[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE COUNTS 2, 3 AND 4 
 I 
An amended complaint was filed with the court on December 3, 1999, which encompasses four counts: Ordinary negligence, strict liability, absolute nuisance and a violation of CUTPA. The defendant filed its motion to strike counts two, three and four of the plaintiff's amended complaint and a supporting memorandum on August 31, 2000. The plaintiff filed an objection and memorandum of law in opposition to the defendant's motion to strike on September 7, 2000. The case was heard by the Court on September 18, 2000.
 II 
The amended complaint alleges the following facts. The plaintiff prochein ami, Dale King, is the court appointed guardian for Timothy S., a mentally retarded minor. Timothy S. is a sexually deviant youth committed to the care, custody and control of the Commissioner of the Connecticut Department of Children and Families. The defendant, Stetson School, Inc., is located in Barre, Massachusetts, and operates a residential facility for children who have either been sexually abused or who have engaged in sexually inappropriate behavior with other children. Starting in September of 1998, Timothy S. had sexual contacts with five other residents. Timothy S. was both the initiator and recipient of the inappropriate sexual conduct, and all of the other residents involved CT Page 162 were older than Timothy S. Timothy S. communicated these encounters to the defendant on January 5, 1999.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . .If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269,270-271, 709 A.2d 558 (1998). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992).
 A Count Two
The plaintiff alleges that the defendant "was engaged in an ultrahazardous activity, to wit, the management and care of sexually assaultive predators housed together in a residential facility." (Count two, ¶ 18.) The defendant argues that this count should be stricken as the plaintiff has failed to allege conduct that rises to the level of ultrahazardous activity. Specifically, the defendant argues that the Connecticut Courts do not consider the treatment and education of students an ultrahazardous activity. In his objection, the plaintiff employs rather inflammatory rhetoric to argue that "[t]he treatment, education and care of multiple youth pedophile is an activity similar to the keeping of wild and dangerous animals, which has historically been considered at common law an activity so inherently dangerous as to impose strict liability."[1] (Plaintiff's Memorandum, p. 3.)
The doctrine of strict liability does not require a plaintiff "to show that his loss was caused by the defendant's negligence. It is sufficient to show only that the defendant engaged in an ultrahazardous activity that caused the defendant's loss. The doctrine has traditionally been applied in cases involving blasting and explosives. See D. Wright J. Fitzgerald, Connecticut Law of Torts (3d Ed.) 122. Connecticut's sole extension beyond blasting cases is to damage from a concussion resulting from pile driving. Caporale v. C. W Blakeslee Sons, Inc., 149 Conn. 79,85, 175 A.2d 61 (1961)." Green v. Ensign-Bickford Co., 25 Conn. App. 479,482-83, 595 A.2d 1383, cert. denied, 220 Conn. 919, 597 A.2d 341 (1991).
Sections 519 and 520 of 3 Restatement (Second), Torts (1991), address strict liability regarding ultrahazardous activities. Section 519 CT Page 163 explains: "(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm" and "(2) [t]his strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."
Whether certain conduct constitutes ultrahazardous activity is a question of law for the court. Green v. Ensign-Bickford Co., supra,25 Conn. App. 485. In Green, the court lists the factors to consider in determining whether an activity is abnormally dangerous as they are set out in 3 Restatement (Second), Torts § 520:" `(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.'" Green v. Ensign-Bickford Co., supra,25 Conn. App. 486. Comment (f) of § 520 states that all of the factors do not need to be present for an activity to be considered abnormally dangerous.[2] Id.
The plaintiff's memorandum of law is, however, devoid of any authority supporting his analogy to wild animals and otherwise lacks a legal analysis of the factors to be employed by the court in determining whether an activity is ultrahazardous. In the absence of such, the court's analysis of the § 520 factors does not support such a conclusion.
Even assuming factors (a) and (b) were determined to weigh in favor of the plaintiff, the court's analysis finds the other factors weighing heavily against the plaintiff. In regard to factor (c), the risk can be eliminated by the exercise of reasonable care, such as single occupancy bedrooms and constant monitoring or appropriate restrictions. When analyzing factor (d), it is clear that facilities of this type cannot be said to be uncommon. Factor (e) is easily laid aside as the state of Massachusetts regulates and has licensed defendant. The analysis of factor (f) is obvious. These kinds of facilities are of value to the community in providing care and treatment in a safe and controlled environment in addition to serving public safety and rehabilitation interests.
The treatment, care and education of abused and distraught children have not been deemed ultrahazardous activities, nor does analysis of the § 520 factors counsel that this activity should be so deemed. It is CT Page 164 therefore the opinion of this Court that, as a matter of law, the plaintiff has failed to allege conduct constituting an ultrahazardous activity, and the motion to strike count two should be granted.
 B Count Three
The plaintiff alleges in count three that "[t]he defendant was engaged in an improper activity upon its premises, to wit, the management and care of multiple sexual predators housed together in the same rooms without adequate supervision" and that this conduct warrants a cause of action for absolute nuisance. (Count three, ¶ 18-19.) The defendant argues that the plaintiff has failed to state a claim upon which relief may be granted; specifically, that the plaintiff fails to allege that the conduct was intentional.
Four elements must be proven to establish nuisance: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; and (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Citations omitted.) Granger v. A. Aiudi Sons,60 Conn. App. 36, 40-41, 758 A.2d 417 (2000). Absolute nuisance has the additional requirement that the conduct be intentional. "`"Intentional," in this context, means "not that a wrong or the existence of a nuisance was intended, but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance."' Dingwell v.Litchfield, 4 Conn. App. 621, 624, 496 A.2d 213 (1985), quoting Beckwithv. Stratford, 129 Conn. 506, 510-11, 29 A.2d 775 (1942)." Green v.Ensign-Bickford Co., supra, 25 Conn. App. 490. "If the creator of the condition intends the act that brings about the condition found to be a nuisance, the nuisance thereby created is said to be absolute and its creator is strictly liable." (Citation omitted.) Quinnett v. Newman,213 Conn. 343, 348, 568 A.2d 786 (1990).
The plaintiff has failed to meet his burden of sustaining a claim for absolute nuisance. The plaintiff fails to allege that the defendant's conduct was intentional or, more specifically, that the defendant intended to bring about the condition which is alleged to be a nuisance.
 C Count Four
Count four of the plaintiff's amended complaint alleges a violation of CUTPA. In his amended complaint, the plaintiff alleges that the defendant operates a residential facility for the care of sexually abused and or CT Page 165 deviant children. The plaintiff further alleges that Stetson School solicits business within the State of Connecticut and "engaged the Connecticut Department of Children and Families as both a client and referral source." (Count four, ¶ 22.) Furthermore, the plaintiff alleges, "At all times herein the defendant has represented itself as capable of meeting the special needs of sexually deviant children, to wit its own letterhead which reads "Stetson School . . . A Solution that Works' or words to that effect." (Count four, ¶ 23.) To the contrary, the plaintiff alleges that "[t]he defendant has routinely neglected to provide adequate protection of children in its care. . ." (Count four, ¶ 24) and that "the defendant's conduct in failing to keep the plaintiff safe and protected has resulted in both unfair and deceptive trade practices in violation of Connecticut General Statutes § 42-110b(a)."[3][4] (Count four, ¶ 25.) Stetson moves to strike count four arguing: (1) because a transactional or competitive relationship does not exist between the plaintiff and defendant, there is no CUTPA claim, (2) as a potential professional negligence claim there is no cause of action pursuant to CUTPA, and (3) as a nonprofit institution, CUTPA does not apply to the defendant.
A claim brought pursuant to CUTPA, "must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based."S. M. S. Textile v. Brown, Jacobson, Etc., 32 Conn. App. 786, 797,631 A.2d 340 (1993). "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . .All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Willow Springs CondominiumAssn., Inc. v. Seventh BRT Development Corp., 245 Conn. 1, 43, 717 A.2d 77
(1998).
Stetson's first argument is that it is a nonprofit entity and that by definition CUTPA only applies to businesses that carry on for profit. The plaintiff argues to the contrary, that in fact it has alleged sufficient facts to establish Stetson School is a money making enterprise and that regardless, the FTC Act does not limit CUTPA solely to corporations carrying out a business for profit. CT Page 166
Even if Stetson were a non-profit entity, CUTPA would apply. State v.Civic Development Group, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. (March 21, 1995, Allen,S.T.R.) ("charitable organizations are not exempt from CUTPA"); see alsoState, v. Cancer Fund of America, Inc., Superior Court, judicial district of Hartford, Docket Nos. 361764, 361058, 361765, (February 23, 1990,Freed, J.), 1 Conn.L.Rptr. 311 (1990). Therefore, this court does not find this argument sufficient to support a motion to strike.
Stetson's second argument is that because there was no transactional or competitive relationship, a cause of action does not arise pursuant to CUTPA. Specifically, Stetson argues that because all of the arrangements for the plaintiff's treatment were made through the Connecticut Department of Children and Families (DCF) the plaintiff did not personally have a transactional relationship with it. The plaintiff argues that is was indeed the actual consumer of Stetson's services and therefore established a transaction relationship between the two. Furthermore, the plaintiff argues that while DCF made the arrangements for the plaintiffs care, "it did so in a fiduciary role as the plaintiff's agent." (Plaintiff's Memorandum, p. 10.) In essence, the plaintiff argues DCF agreed to pay on the plaintiff's behalf and as a result, a traditional exchange of consideration occurred between the parties.
"Although privity, in the traditional contractual sense of an exchange of consideration between parties, may no longer be essential for standing under CUTPA, a claimant under CUTPA must possess at least some type of consumer relationship with the party who allegedly caused harm to him or to her." Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 726-27,627 A.2d 374 (1993).
It is the opinion of the court that a transactional relationship does exist with Stetson on behalf of the plaintiff and that the plaintiff was in fact a consumer of the services provided.
Stetson's final argument as to why this motion to strike should be granted in regards to the CUTPA claim is that the plaintiff is merely alleging a professional negligence action which the courts have held do not fall within the realm of CUTPA. Specifically, Stetson points to the fact that the complaint alleges "the defendant has routinely neglected to provide adequate protection of children placed in its care" and that it is "capable of meeting the needs of sexually deviant children." (Count four, ¶ 23-24.)
The plaintiff disagrees, arguing that only medical and legal CT Page 167 malpractice are beyond CUTPA's scope but entrepreneurial or commercial aspects of these professions, are covered under CUTPA. The plaintiff argues it was provided with three separate services, room and board, education and a quasi-medical component that involved therapeutic treatment for pedophillia, and that only the first service is at issue in this count.
In Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34, 699 A.2d 964
(1997), the court held "professional negligence — that is malpractice — does not fall under CUTPA." The court did "not decide whether negligence alone is sufficient to support a CUTPA violation." Id. The court, however, suggested that when entrepreneurial or commercial aspects exist within a professional negligence claim, CUTPA may be violated. Id., 35.
Stetson argues Haynes v. Yale-New Haven Hospital, supra, 243 Conn. 17, (1997) supports its proposition that devoid of any allegations that only entrepreneurial or commercial aspects have harmed the plaintiff, it is entitled to have this count stricken. The Court agrees.
 CONCLUSION 
The court grants the defendant's motion to strike counts two, three and four of the plaintiff's amended complaint. Specifically, the plaintiff has failed to allege sufficient facts to sustain a cause of action in the instant case for strict liability or nuisance or violation of CUTPA.
Hale, JTR